**Overton A. CURRIE, an individual, Plaintiff–Appellant,**

v.

**CAYMAN RESOURCES CORPORATION, et al., Defendants–Appellees.**

No. 86–8756.

United States Court of Appeals, Eleventh Circuit.

Jan. 12, 1988.

Rehearing and Rehearing En Banc Denied Feb. 18, 1988.

Jeffrey Smith, Arnall, Golden & Gregory, Charles T. Huddleston, Peter J. Howard, Atlanta, Ga., for plaintiff-appellant.

Keith M. Wiener, Webb & Daniel, Atlanta, Ga., for defendants-appellees.

Before VANCE and CLARK, Circuit Judges, and GARZA *, Senior Circuit Judge.

VANCE, Circuit Judge:

Appellant Overton A. Currie appeals a decision by the district court granting a motion for directed verdict in favor of the Cayman defendants[1] in a securities lawsuit. Currie makes three contentions on appeal: (1) that the district court erroneously required appellant to establish reasonable reliance for a claim under section 12(2) of the Securities Act of 1933; (2) that the district court's directed verdict on the other noncontract claims was improper because sufficient evidence of reasonable reliance was presented to survive the motion; and (3) that the district court erroneously dismissed a claim under section 17(a) of the Securities Act of 1933 on the ground that the statute implies no private right of action. Finding that the district court improperly granted the motion for directed verdict with respect to the section 12(2) claim, we affirm in part and reverse in part.

I.

Currie filed this action on August 30, 1982 alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the regulations promulgated under the federal securities statutes by the Securities and Exchange Commission ("SEC"), and various violations of the laws of Georgia and Texas. Currie alleged that the claims are based on his investment in small, independent oil companies represented by the Cayman and RebPet defendants which are involved in the production and sale of hydrocarbon substances. According to appellant's amended complaint, representatives of REB Petroleum Company made several misrepresentations in soliciting Currie's investment in RebPet limited partnerships.[2] Currie's investment in RebPet limited partnerships from 1976 to 1981 totaled over $421,913. Currie alleges that he received only $73,413.14 from the partnership, approximately one percent of the return he was promised to receive.

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Cayman defendants named in the original complaint and its amendments include: Cayman Resources Corporation, Cayman Production Company, Cayman Corporation, and individually, David M. Whitney, President of Cayman; William C. Rankin, Vice-President and Chief Financial Officer of Cayman, and Donald W. Fowler. The amended complaint also named Reb Petroleum Co., three RebPet limited partnerships and other individuals associated with Reb Petroleum Co., including Robert E. Best, P.W. McCleskey Jr., Melvin L. Wellons, J.G. O'Donohoe and Hugh Echols (the "RebPet" defendants).

Mr. Wellons and Mr. O'Donohoe were dismissed from the case by the appellant. The district court entered an order dismissing appellant's claims against Mr. McCleskey and the jury issued a verdict in favor of Mr. Best and Mr. Echols. Appellant only appeals from the directed verdict in favor of the Cayman defendants.

2. Appellant alleged that the offer and sale of the limited partnerships were exempt from the registration requirements of the Securities and Exchange Commission because the interests were sold in a private offering.

In 1980 the RebPet defendants sought the approval of the limited partners to an agreement substituting Cayman Production Company as the general partner of certain RebPet limited partnerships. The agreement included a plan whereby the limited partners could exchange their limited partnership interests for newly issued stock in Cayman.[3] Currie received a proxy statement and prospectus from Cayman Resources Corporation explaining the exchange offer. Currie alleges that William C. Rankin, vice-president and chief financial officer of Cayman, flew to Atlanta to induce Currie's acceptance of the exchange offer. According to the amended complaint Rankin misrepresented Cayman's assumption of RebPet's liabilities and obligations and the "disadvantages" of not participating in the transaction. Currie also maintains that the Cayman defendants failed to inform him that R.W. McCleskey, the former president of REB Petroleum Company, characterized the transaction as "absurd in its entirety," and that Mr. Abrams, the largest holder of the limited partnership interests, decided not to participate in the transaction.

Currie alleged numerous claims in his complaint. On September 24, 1984 the district court granted defendants' motion to dismiss the claim under section 17(a) of the Securities Act of 1933. 595 F.Supp. 1364. The district court subsequently granted a motion for directed verdict in favor of the Cayman defendants on the remaining issues.[4]

## II.

### A.

 Currie contends that the district court erred in granting a motion for directed verdict in favor of the Cayman defendants because the district court included reasonable reliance as an element of his section 12(2) claim.[5] In its order granting the motion for directed verdict, the district court stated that "[a] reasonable person, especially an attorney, in the factual context established by this case, would not have relied upon an oral assertion of Mr. Rankin plus the exchange of the Rankin-Currie letters (which do not mention 'assumption') on the legal question of whether the particular liabilities here asserted had been assumed."

We hold that the district court erroneously included reasonable reliance as an element of a claim under section 12(2) of the Securities Act. Under section 12(2) "plaintiffs need not prove that they relied in any way on the alleged misrepresentations or omissions." *Hill York Corp. v. American Int'l Franchises, Inc.*, 448 F.2d 680, 695 (5th Cir.1971); *see Sanders v. John Nuveen & Co., Inc.*, 619 F.2d 1222, 1225 (7th Cir.1980) ("It is well settled that § 12(2) imposes liability without regard to whether the buyer relied on the misrepresentation or omission."), *cert. denied*, 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981); *Gilbert v. Nixon*, 429 F.2d 348, 356 (10th Cir. 1970); *John Hopkins Univ. v. Hutton*, 422 F.2d 1124, 1129 (4th Cir.1970). Plaintiffs

---

3. This exchange offer was registered with the SEC.

4. The district court concluded that the Cayman defendants did not assume certain liabilities of the RebPet defendants. Appellant has not appealed this decision.

5. Section 12(2) provides:
Any person who—
(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
15 U.S.C. § 77*l*(2).

seeking to recover under section 12(2) must only prove "that the defendants sold or offered to sell these securities by the use of the mails or instruments of transportation or communication in interstate commerce, and that the defendants misrepresented or omitted material facts." *Hill York*, 448 F.2d at 695; *see Junker v. Crory*, 650 F.2d 1349, 1359 (5th Cir. Unit A July 1981); *Pharo v. Smith*, 621 F.2d 656, 665 (5th Cir.1980). In addition plaintiffs must prove that they "had no knowledge of any untruth or omission." *Hill York*, 448 F.2d at 695.

■ In this case appellant established the initial elements of a section 12(2) claim through testimony that Rankin traveled to Atlanta to present the exchange offer to Currie. Appellant also submitted sufficient evidence to establish that the Cayman defendants misrepresented and omitted material facts and that Currie had no knowledge of any untruth or omission. On February 11, 1982 Currie told Rankin that he was considering a lawsuit against the Reb-Pet defendants. During the conversation Currie expressed concern over whether Cayman had assumed certain liabilities. According to the testimony at trial, Rankin told Currie that Cayman "had assumed the liability" of the RebPet defendants. In a letter to Bill Woodson, appellant's attorney, dated February 16, 1982 Rankin stated that Cayman's general counsel had agreed that the "acceptance of the offer would not prejudice Mr. Currie's rights." Currie also testified that Rankin made several comments during his February 11 conversation with Currie and Woodson that there would be "disadvantages" to not participating in the exchange offer. Yet Cayman's president, David M. Whitney, testified at trial that "there were no negative consequences to not taking the exchange offer. They were not—their interest should not have changed at all."

Similarly, with respect to the omissions, Currie argues that McCleskey wrote a letter to a Cayman representative, Robert

Best, describing the exchange offer as "absurd in its entirety," and yet this letter was not disclosed to Currie. Another alleged omission by the Cayman defendants was the failure to disclose to Currie that Mr. Abrams, the largest limited partner in Reb-Pet, did not participate in the exchange offer.

Section 12(2) applies only to material misrepresentations and omissions. 15 U.S.C. § 77*l*(2). In *TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), the Supreme Court stated that the test of materiality is whether there is a substantial likelihood that a reasonable investor would consider the omitted facts or misrepresentations important in deciding whether to invest. *See id.* at 449, 96 S.Ct. at 2132; *Kennedy v. Tallant*, 710 F.2d 711, 719 (11th Cir.1983); *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1323 (11th Cir.1982). As the Fifth Circuit warned in *Hill York*, "[a] causation test should not be read into this Section." 448 F.2d at 696. We believe that each of the alleged misrepresentations and omissions by the Cayman defendants was material.

■ Appellees argue that even if the Cayman representatives made a misrepresentation, appellant did not establish that he had no knowledge of any untruth because the proxy statement and prospectus mailed to Currie in connection with the exchange offer provided information about which RebPet liabilities were assumed by Cayman. Appellees, however, cannot receive a directed verdict on the basis that the information was hidden in a proxy statement; this presents a question of fact for the jury.[6] Because this court must view the evidence in a light most favorable to the nonmoving party, *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969), we conclude that a jury may have drawn a rational inference in favor of Currie and that the district court inappropriately granted the motion for directed verdict.

---

6. Both the complaint and the pretrial order belie appellees' other contention that Currie did not assert a section 12(2) claim against the Cayman defendants. Appellees' novel contention of judicial estoppel on the grounds that appellant submitted a requested instruction which allegedly includes reliance as an element to a section 12(2) claim is also without merit.

## B.

■ Appellant argues that the district court erroneously dismissed count three of his amended complaint, which sought damages for an alleged violation of section 17(a) of the Securities Act of 1933.[7] The district court dismissed the claim on the ground that no implied private cause of action exists under section 17(a). Although some circuits hold that section 17(a) implies a private right of action,[8] the better reasoned authority holds that section 17(a) does not provide a private right of action.

See In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349 (9th Cir. 1987) (en banc); Landry v. All American Assurance Co., 688 F.2d 381, 389 (5th Cir. 1982). We find the Fifth Circuit's decision in Landry particularly persuasive. Applying a conservative Cort v. Ash analysis, see 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[9] the Fifth Circuit concluded that "§ 17(a) of the Securities Act of 1933 points away from the implication of a private cause of action." Landry, 668 F.2d at 391.[10] We therefore hold that section 17(a)

**7.** Section 17(a) provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

**8.** See Kirshner v. United States, 603 F.2d 234, 241 (2d Cir.1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); Newman v. Prior, 518 F.2d 97, 99 (4th Cir.1975); Kellman v. ICS, Inc., 447 F.2d 1305, 1308–09 (6th Cir.1971). Contra Brannan v. Eisenstein, 804 F.2d 1041, 1043 n. 1 (8th Cir.1986). Circuit decisions finding a private right of action rely on Judge Friendly's statement in his concurring opinion in SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 867 (2d Cir.1968) (en banc) (Friendly, J., concurring), cert. denied, 404 U.S. 1005, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Judge Friendly stated: "Once it had been established, however, that an aggrieved buyer has a private action under § 10(b) of the 1934 Act, there seemed little practical point in denying the existence of such an action under § 17...." Id. The early circuit decisions were weakened by subsequent Supreme Court decisions establishing that the two provisions had different culpability standards. Compare Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (scienter is an essential element to a Rule 10b–5 action) with Aaron v. SEC, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) (scienter is required under section 17(a)(1), but not sections 17(a)(2) and 17(a)(3)).

Several circuits have indicated a willingness to reexamine whether an implied private right of action exists under section 17(a). See e.g., Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 530–31 (7th Cir.1985); Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 559 n. 3 (2d Cir.1985); SEC v. American Realty Trust, 586 F.2d 1001, 1006–07 (4th Cir. 1978).

We note that the Supreme Court has declined to address the issue whether an implied right of action exists under section 17(a). See Bateman Hill Richards, Inc. v. Berner, 472 U.S. 299, 304 n. 9, 105 S.Ct. 2622, 2625 n. 9, 86 L.Ed.2d 215 (1985); Herman & MacLean v. Huddleston, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); International Bhd. of Teamsters v. Daniel, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 734 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975).

**9.** The Supreme Court set forth a four-part test for determining when a private remedy should be implied under a statute in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The test requires a court to analyze:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally related to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (emphasis in original) (citations omitted).

**10.** The Ninth Circuit recently reversed its prior decisions which had implied a private remedy under section 17(a). In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349 (9th Cir.1987). The court stated that its prior deci-

does not imply a private cause of action and that the district court correctly dismissed this theory of relief.

## C.

■ Currie also challenges the district court's directed verdict for appellees on the other noncontract claims. The district court based its decision on Currie's failure to establish reasonable reliance. Currie argues that he presented sufficient evidence of reasonable reliance to escape a directed verdict on those claims. Regardless of whether Currie established the reliance element, however, we hold that Currie failed to offer sufficient evidence of loss causation to avoid a directed verdict on the noncontract claims.

In *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir. Unit A Mar. 1981), *aff'd in part and rev'd in part*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), the Fifth Circuit stated that in an action under section 10(b):

Causation is related to but distinct from reliance. Reliance is a *causa sine qua non*, a type of "but for" requirement: had the investor known the truth he would not have acted. Causation requires one step further in the analysis: even if the investor would not otherwise have acted, was the misrepresented fact a *proximate* cause of the loss? The plaintiff must prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss.

*Id.* at 549 (emphasis in original) (citation omitted) (footnote omitted). Some courts make the distinction between the terms "transaction causation" and "loss causation." *Id.* at 549 n. 24; *see Harris v. Union Elec. Co.*, 787 F.2d 355, 366 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986); *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 92 n. 7 (2d Cir.1981); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 380 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Transaction causation, another way of describing reliance, is established when the misrepresentations or omissions cause the plaintiff "to engage in the transaction in question." *Schlick*, 507 F.2d at 380. Loss causation requires a showing that "the misrepresentations or omissions caused the economic harm...." *Id.* In other words a plaintiff must demonstrate that the defendant's fraudulent conduct "touches upon the reasons for the investment's decline in value." *Huddleston*, 640 F.2d at 549; *see Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 718 (2d Cir.1980) (Meskill, J., dissenting) ("where one is induced to purchase securities in reliance upon a claim which, however deceitful, is immaterial to the operative reason for the pecuniary loss, recovery under a theory of fraud is precluded by the inability to prove the requisite causation").

Currie did not prove a causal relationship between the alleged untruths and his pecuniary loss. Currie has yet to show that the Cayman stock he received in the exchange offer was valued, due to the misrepresentations and omissions, less than the limited partnership interests. Currie therefore failed to establish an essential element of his section 10(b) claim.[11] Currie's failure to establish proximate cause likewise supports the district court's directed verdict on the other noncontract claims. *See, e.g.,*

---

sions had "misinterpreted" Judge Friendly's statement in his *Texas Gulf Sulfur* concurrence. Conducting a *Cort* analysis and considering the "contemporary legal context" at the time of the 1934 comprehensive amendment to 1933 Securities Act, the Ninth Circuit concluded that Congress did not intend to imply a private remedy under section 17(a). *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d at 1356, 1358.

**11.** A section 10(b) claim also requires the plaintiff to establish scienter. *Ernst & Ernst v. Hoch-*

*felder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In this circuit a plaintiff may establish scienter by showing knowing misconduct or severe recklessness by the defendant. *Carriba Air, Inc.*, 681 F.2d at 1324. Appellant argues that when Rankin discovered that Cayman Production Co. did not assume the liabilities he did not inform Currie. Even if true, this conduct may not rise to the level of recklessness because the true information was contained in the proxy statement and prospectus.

*Galanti v. United States,* 709 F.2d 706, 708 (11th Cir.1983) (proximate cause is an element of a negligence action), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984); *International Indem. Co. v. Terrell,* 344 S.E.2d 239, 244 (Ga.Ct. App.1986) (plaintiff must suffer a loss proximately caused by the fraud); *State Nat. Bank of El Paso v. Farah Mfg. Co., Inc.,* 678 S.W.2d 661 (Tex.Ct.App.1984) (proximate cause is an element of a fraud action).

### III.

For all the foregoing reasons the decision of the district court is

AFFIRMED in part, REVERSED in part and REMANDED.