**Walter L. SMITH, Plaintiff,**

v.

**Gerald SMITH, Cytoferon Corp., Viragen, Inc. and John Does Nos. 1–10, Defendant.**

**No. 97–3187–CIV–MOORE.**

United States District Court,
S.D. Florida,
Miami Division.

Nov. 17, 1998.

Juan C. Martinez, St. Luis & Martinez, Coral Gables, FL, for plaintiff.

Alice Hector, Hector & Clarke, Miami, FL, for defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion for Mandatory Sanctions (DE # 8).

UPON CONSIDERATION of the Motion, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

The facts leading to this motion are as follows: In his complaint filed October 2, 1997, Plaintiff Walter Smith ("Smith") alleged Viragen, Inc. ("Viragen") owed him 100,000 shares of stock he says he purchased in return for providing services pursuant to a contract between the parties. Smith also claimed he had options to purchase 441,368 shares of Viragen stock allegedly received in connection with his purchase of Cytoferon Corporation ("Cytoferon") stock pursuant to a Consulting Agreement, a letter agreement dated July 18, 1992 and an additional agreement for the provision of other services to Cytoferon. Smith alleged that sometime prior to 1993, Defendants devised a scheme to deprive Smith of his ability to sell certain Viragen shares at the top of the last market cycle and to convince Smith to purchase Cytoferon and Viragen securities on the basis of fraudulent misrepresentations and omissions. Smith alleged as damages the reasonably foreseeable loss of his ability to have sold the Viragen shares which he was previously entitled to receive at an advantageous time in the market when the trading price of Viragen stock was higher. In other words, Smith claims that had Defendants complied with their contractual obligations, Smith would have received the Viragen shares which he subsequently may have sold at their highest price.

Smith's eleven-count complaint included claims for violations of federal and state securities laws, violations of federal and state RICO, breach of contract, fraud, breach of fiduciary duty and specific performance. Prior to filing the complaint, Smith and his counsel Juan Martinez sent Defendants a demand letter threatening to file the complaint. Counsel for Defendants advised Mr. Martinez the draft complaint substantially failed to comply with Rule 11 of the Federal Rules of Civil Procedure and Defendants would seek Rule 11 sanctions should Smith proceed with the complaint as drafted. Smith subsequently filed the complaint. Defendants moved to dismiss and served, but did not file, their Motion for Rule 11 Sanctions. Upon receiving a copy of the motion, Smith voluntarily dismissed the complaint and refiled the action in state court. On November 14, 1997, this Court entered a Final Order of Dismissal dismissing the case without prejudice, with each party bearing its own fees and costs.

Defendants subsequently filed this motion for sanctions arguing the complaint failed to comply with the requirements of Rule 11 and, pursuant to the Private Securities Litigation Reform Act (the "Reform Act"), the Court is required to impose sanctions upon Smith and his counsel. Smith argues the "safe harbor" provision of Rule 11 prevents this Court from imposing sanctions and because the case was voluntarily dismissed, there is no basis for sanctions.

## DISCUSSION

The central purpose of Rule 11 of the Federal Rules of Civil Procedure is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Rule 11 imposes a duty on attorneys to certify they have conducted a reasonable inquiry and have determined that any papers filed with the Court are "well grounded in fact,

legally tenable and 'not interposed for any improper purpose.'" *Id.* A violation of Rule 11 may subject the pleading party and his attorney to sanctions. Fed.R.Civ.P. 11. In 1993, Congress amended Rule 11 to include a 21–day "safe harbor" whereby a party who filed a document in violation of the rule had 21 days to withdraw or correct the filing prior to being sanctioned. *Id.*

 In 1995, Congress adopted the Reform Act over President Clinton's veto. The main purpose behind the Reform Act is to curtail the abusive actions of plaintiffs in securities litigation who bring meritless claims hoping to initiate discovery and uncover evidence that was not alleged in the complaint. The Reform Act seeks to dispose of these types of claims before a defendant is forced to engage in expensive and protracted discovery. In addition, section 78u–4(c)(1) of the Reform Act provides that "[i]n any private action arising under this title, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with the requirement of Rule. 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading or dispositive motion." If the Court finds a violation of Rule 11, "the court shall impose sanctions on such party or attorney . . ." The ultimate and practical effect of this provision of the Reform Act is that the 21–day safe harbor no longer applies to federal securities actions brought under the Reform Act. When there is no safe harbor, "a violation of Rule 11 is complete when the paper is filed." *Cooter & Gell,* 496 U.S. at 395, 110 S.Ct. 2447 (quoting *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987)).

 Plaintiff argues that because the case was dismissed voluntarily, without prejudice and in accordance with Rule 41(a)(1)(i), there was no "final adjudication" for purposes of the Reform Act and thus no basis for sanctions. This argument, however, is contrary to present law. In *Cooter & Gell,* the Supreme Court held that because both Rule 41(a)(1) and Rule 11 were aimed at curbing abuses of the judicial system, "nothing in the language of Rule 41(a)(1)(i), Rule 11, or other

statute or Federal Rule terminates a district court's authority to impose sanctions after such dismissal." 496 U.S. at 395, 110 S.Ct. at 2455. *Cooter* was decided prior to passage of the safe harbor. Thus, if this suit was not filed under the Reform Act, Smith's argument would have merit. However, because the Reform Act eliminates the safe harbor for federal securities litigation, the reasoning behind *Cooter* is valid and the implication under the Reform Act the same: a voluntary dismissal does not bar the Court from imposing sanctions.

Having determined that sanctions are appropriate in a federal securities action even upon a voluntary dismissal, the Court must now examine the facts of this case to determine if sanctions are warranted. A review of the substantive allegations of the complaint indicate that many-particularly the federal claims-are flawed such that Smith and Mr. Martinez should have known there was no basis under which to make such allegations. For example, Count I alleges violations of the federal securities laws. Federal securities laws claims must be commenced within one year of discovery of the facts constituting the violation and within three years after the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Here, each of the alleged purchases and sales of securities took place sometime in 1992. Smith filed this complaint in October 1997, some five years after the dates at issue and at least two years after the statute of limitations expired. Thus, based on the alleged facts, Smith could not have brought a proper claim under the federal securities laws because it was time-barred. Furthermore, Smith partially bases this action on Section 17 of the Securities Act of 1933. The law in the Eleventh Circuit, however, clearly states there is no private right of action under Section 17. *Currie v. Cayman Resources Corp.,* 835 F.2d 780, 784–85 (11th Cir.1988); *see also Fox v. Acadia State Bank,* 937 F.2d 1566 (11th Cir.1991) (where Eleventh Circuit affirmed a district court's imposition of sanctions due to failure of plaintiff to bring the *Currie* decision to the court's attention). Another deficiency concerns Smith's federal

RICO claim. Most importantly, Smith fails to mention what section of RICO Defendants allegedly violated. Smith also fails to identify what predicate acts are being alleged. These deficiencies alone would warrant dismissal of Smith's claim. Even assuming Smith's RICO claim was based on federal securities laws violations, this to is deficient. The Reform Act specifically provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." Thus, based on Smith's own allegations, his federal RICO claim is baseless. In addition, Smith's state RICO claim is deficient because Florida law makes no provision for a private right of action. A cursory review of the statute would have alerted Smith and Mr. Martinez of this restriction.

The Court is particularly disturbed at the deficiency of Smith's federal claims and views their lack of merit as sanctionable conduct. The Court believes, based on the substance of Smith's allegations, that his federal claims were included in the complaint simply to bring this case into federal court. It appears there was no basis for the federal claims in this action.[1] Smith's actions violate the Reform Act's central purpose of preventing frivolous lawsuits initiated to intimidate defendants and force them into a quick settlement. It is particularly telling that in the face of a motion for sanctions, Smith immediately withdrew his case from federal court. It appears to the Court that Smith mistakenly assumed he was protected by the safe harbor provision and took advantage of it to file his complaint. If the safe harbor provision was applicable, all Smith had to do was withdraw the complaint if it did not generate the response he desired-which is precisely the action he took. Prior to passage of the Reform Act, this Court would likely be powerless to impose sanctions because, as Smith correctly argues, Rule 11 allows for such behavior. However, the Reform Act does not. This is precisely the type of case Congress was trying to prevent when it passed the Reform Act. As a result, the Court is mandated to impose sanctions if it should find any substantial failure of a complaint to comply with any requirement of Rule 11. As explained above, the Court finds such failure in this case.

Smith's response to Defendant's motion simply addresses the procedural issues concerning whether sanctions are warranted when a case is voluntarily dismissed. In a footnote, Smith states "Because of the arguments presented herein, and in an effort to minimize fees and expenses on this matter and in the interest of judicial economy, plaintiff presents herein only his arguments as to why the motion for sanctions is procedurally improper." Smith later states that should the Court determine sanctions are warranted, he "requests an opportunity to explain why the complaint does not violate Rule 11(b)." Were it this Court's decision, Smith would be denied any opportunity to respond further, as he should have made his arguments at the appropriate time. The Court is not in the habit of allowing parties to present one argument and should that fail, present alternative arguments at a later date. The Court will grant Smith's request, however, because it is mandated by the Reform Act to do so. Section 78u–4(c)(2) states that "prior to any finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond." Smith and Mr. Martinez shall have fifteen (15) days from the date of this Order to file with the Court a response indicating why sanctions consisting of attorney's fees and costs incurred by Defendant in defending this action are not warranted. Should Smith fail to take such action, this Court will enter an Order awarding appropriate sanctions to Defendants in an amount to be determined.

### CONCLUSION

Based on the foregoing, Defendant's motion is GRANTED to the extent the Court

---

1. Although the Court notes various other deficiencies in Smith's non-federal allegations, the Court does not believe they rise to the level of sanctionable conduct.

finds a basis for sanctions to be imposed on Smith and his counsel. Smith and Martinez shall file with this court a response to show why sanctions are not warranted. Upon review of Plaintiff's response, this Court will enter the appropriate order on Defendant's Motion.