SHEPHERD, J.
Plaintiff-appellant Walter Larry Smith (“Walter Smith”), his attorneys, Juan Martinez and Roland St. Louis, and their respective law firms of St. Louis, Guerra & Auslander and St. Louis & Martinez appeal an order of the circuit court awarding attorneys’ fees and costs to the defendant-appellee. We have jurisdiction, Art. V, § 4(b)(1) of the Florida Constitution, and affirm.
I. FACTS
This appeal arises out of a dispute between Walter Smith and, collectively, Vira-gen, Inc., Cytoferon Corp., and Gerald Smith.[1] Viragen is a publicly-traded, biomedical research company. Cytoferon was formed to raise capital for Viragen by selling stock, options, warrant rights and *189 other securities. On July 18, 1992, Walter Smith purchased warrant and option rights to Viragen from Cytoferon. The record indicates that Viragen was neither a party to that agreement nor was it involved in the negotiations leading up to the agreement. Walter Smith attempted to exercise those rights in October 1994. Gerald Smith, an officer in Cytoferon, allegedly refused to allow Walter Smith to exercise his rights. As detailed below, Walter Smith commenced suit against Vir-agen, Cytoferon, and Gerald Smith, first in federal and then in state court.
II. PROCEDURAL HISTORY
Walter Smith was represented by the co-appellant attorneys and law firms referenced above. In October 1997, Walter Smith, through attorney Martinez, sent a demand letter to the defendants threatening suit in federal court. The defendants responded with a letter indicating that the proposed suit would, in their opinion, violate Federal Rule of Civil Procedure 11 and that the defendants would seek sanctions if Walter Smith proceeded with the lawsuit. Nevertheless, in late October or early November. 1997, Walter Smith filed an eleven-count complaint in the United States District Court for the Southern District of Florida alleging violations of “federal and state securities laws, violations of federal and state RICO, breach of contract, fraud, breach of fiduciary duty and specific performance.” Smith v. Smith, 184 F.R.D. 420, 421 (S.D.Fla.1998). Defendants moved to dismiss and served, but did not immediately file, a motion for sanctions under Rule 11. Upon receiving the motion, Smith quickly took a voluntary dismissal[2] of his. federal lawsuit in November 1997 but simultaneously re-filed it in Miami-Dade County Circuit Court, excluding only the federal causes of action.
On March 6, 1998, the circuit court granted the defendants’ motion to dismiss on the grounds that the complaint was nothing more than “one hundred-thirteen (113) paragraphs [of] repetition, conjecture, conclusions, and confusion.” Ultimately, in January 2001, a successor circuit judge, after enduring three years of motion practice directed to an amended complaint possessed of substantially the same thrust and causes of action as the original, granted summary judgment to Viragen. The summary judgment was supported by the report and recommendation of a special master with extensive experience in the securities litigation field who had meticulously reviewed the record against each count of the amended complaint. The special master’s report, adopted by the successor circuit judge after an extensive hearing of her own, found on a count-by-count basis that there was “no record evidence” to support any count of the complaint.
Such an outcome in state court should not have surprised Walter Smith or his attorneys because in November 1998, more than two years prior to the entry of the summary judgment by the successor circuit judge, the United States District Court issued an order to Walter Smith and his counsel, Juan Martinez, to “show cause why sanctions [should not be imposed]” against them pursuant to the earlier filed Rule 11 motion. Id. In a thorough five page opinion supporting his show cause *190 order, the district court found Walter Smith’s federal claims “baseless” and his state RICO claim “deficient.” The district judge further wrote:
[That a] review of the substantive allegations of the complaint indicate that many — particularly the federal claims— are flawed such that Smith and Mr. Martinez should have known there was no basis under which to make such allegations ... [that it was] particularly telling ... that in the face of a motion for sanctions, Smith immediately withdrew his case from federal court ... [and that] [i]t appears to the court that Smith mistakenly assumed he was protected by the safe harbor provision and took advantage of it to file its complaint. If the safe harbor provision was applicable, all Smith had to do was withdraw the complaint if it did not generate the response[3] he desired — which is precisely the action he took.
Id. at 422-423. Finally, noting that the main purpose of the Reform Act was to “curtail the abusive actions of plaintiffs in securities litigation,” Id. at 422, the court concluded that the federal action, which included mirror image state causes of action to those alleged below, was “precisely the type of case Congress was trying to prevent when it passed the Reform Act.” Id. at 423. Unfortunately, the judgment below and resulting sanction order under review here were nearly pre-ordained.
In February 2001, Viragen filed a motion for an award of attorneys’ fees and costs against Walter Smith, his attorneys and their law firms in circuit court pursuant to sections 57.105 and 895.05(7) of the Florida Statutes. Following a hearing held on January 30, 2002, the circuit court ruled on February 11, 2002, that Viragen was entitled to attorneys’ fees and costs, noting that:
Nothing in the record shows that Vira-gen was part of any agreement, or was even noticed of any plan or intent to have an agreement. Nor is there anything in the record which indicates that Cytoferon or Gerald Smith was an agent for Viragen. In short there was no question upon which a jury could deliberate as it pertained to defendant Vira-gen, and this is apparent on the face of the complaint itself with its attachments.
In March 2003, the circuit court issued its final order setting the amount of the award — $209,184.81 in favor of all defendants against the plaintiff, his counsel and their law firms, jointly and severally. On June 26, 2003 the court clarified the award by specifying that $104,592.11 is the amount specifically due defendant Viragen. In this appeal, Walter Smith and his counsel contest only the award to Viragen.
III. DISCUSSION
Viragen sought attorneys’ fees pursuant to section 57.105(1) of the Florida Statutes (1998),[4] which states in pertinent part:
The court shall award a reasonable attorney’s fee to be paid [ ] by the losing party and the losing party’s attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint []; provided, however, that the losing party’s attorney is not personally responsible if he or she has acted in good faith, based on the *191 representations of his or her client. (Emphasis added).
It cannot be disputed based upon the record in this case that Walter Smith and his attorneys knew, or clearly should have known, that Viragen could not be liable to Walter Smith because Walter Smith contracted and dealt only with Cy-toferon and Gerald Smith. If there was any doubt about the lack of potential liability of Viragen to Walter Smith, that doubt was dispelled beyond peradventure in the reported decision of the federal district court. See Smith, 184 F.R.D. at 422-24. Nevertheless, Walter Smith and his counsel proceeded with a frivolous, meritless lawsuit against Viragen for which there was a complete absence of a justiciable issue of either law or fact. See Visoly v. Security Pac. Credit Corp., 768 So.2d 482 (Fla. 3d DCA 2000); Security Pac. Credit Corp. v. Oasis Plaza Corp., 714 So.2d 1039 (Fla. 3d DCA 1998) (plaintiff “did not act in good faith where he re-litigated claims that had already been determined to be a sham”). Accordingly, the circuit court did not abuse its discretion by awarding attorneys’ fees against Walter Smith and his counsel.
Viragen also sought fees pursuant to section 895.05(7), for bringing a frivolous civil RICO claim.[5] A successful defendant in a civil RICO action can recover fees when the RICO claim is “without substantial fact or legal support.” Foreman v. E.F. Hutton & Co., 568 So.2d 531, 532 (Fla. 3d DCA 1990) (affirming fees under section 772.104 when the case was disposed of on the pleadings alone); see also Roth, 647 So.2d at 1025 (noting that the standard for awarding fees under sections 772.104 and 895.01 is “slightly less stringent” than the “bad faith” standard of section 57.105). The circuit court found that the civil RICO suit against Viragen was without such support in both fact and law, and thus also properly awarded fees pursuant to section 895.05(7).
Walter Smith also argues that the circuit court’s failure to distinguish between the amount awarded pursuant to section 895.01 and section 57.105 is reversible error. We find that the court’s failure to do so is of no consequence in this case because the entire award could have been made pursuant to section 57.105 alone.
Affirmed.

. Walter Smith and Gerald Smith are unrelated.

. Since 1993, Federal Rule of Civil Procedure 11 has included a safe harbor provision whereby a party who files a document in violation of the rule has 21 days to withdraw or correct the document without being subject to sanctions. However, as Walter Smith and his counsel were to learn, the safe harbor provision does not apply to federal securities actions that arise under the Private Securities Litigation Reform Act. 15 U.S.C. § 78u-4 (2004); see also Smith, 184 F.R.D. at 422.

. As the United States District Court decision notes, the Reform Act was adopted in 1995 at the high water mark of "frivolous [securities] lawsuits initiated to intimidate defendants and force them into a quick settlement.” Id. at 423. Our courts should be no less averse to such improper in terrorem tactics.

. The parties agree that the 1998 version of section 57.105 is controlling.

. Although we find the distinction to be of no consequence here, it would appear that Walter Smith should have brought his civil RICO action for damages pursuant to this state’s "civil” RICO Act, Chapter 772 of the Florida Statutes, rather than Chapter 895, which is more suited on its face for use in state-sponsored civil cease and desist injunctive actions as well as criminal enforcement. See, e.g., Remova Pool Fence Co. v. Roth, 647 So.2d 1022, 1025 (Fla. 4th DCA 1994) (noting the confusion between the attorneys fees provisions in the respective statutes) superseded by statute on other grounds as noted in Heilman v. Florida Dept. of Revenue, 727 So.2d 958 (Fla. 4th DCA 1998).