768 So.2d 482 (2000)
Miri Mayost VISOLY and Aviad Visoly, Appellants,
v.
SECURITY PACIFIC CREDIT CORPORATION, Appellee.
No. 3D99-1155.
District Court of Appeal of Florida, Third District.
August 16, 2000.
*484 Avi J. Litwin, Miami Beach, for appellants.
Richard L. Lapidus, Miami, for appellee.
Before LEVY, and GERSTEN, JJ., and NESBITT, Senior Judge.
*485 GERSTEN, J.
We affirm the order below assessing attorney's fees personally against appellants Miri Mayost Visoly and Aviad Visoly [hereafter collectively referred to as "the Visolys"]. We further grant the motion for appellate attorney's fees against the Visolys and their lawyer for the filing of this frivolous appeal which attempts to argue and re-litigate matters long concluded by judgments of the trial court and opinions of this Court, and which is contradicted by the evidence and established case law.
Nothing operates more certainly to demean the profession of practicing law, than does the notion that effective advocacy condones stretching the boundaries of professional ethics in the name of pursuing client interests. We are concerned that the line separating effective advocacy from complicity in a client's violations has been crossed not only by trial counsel, but by appellate counsel as well.
Crossing this line resulted in appellee, Security Pacific Credit Corporation ("Security Pacific"), spending over $750,00 in legal fees to foreclose a mortgage that was held valid in 1990 by the trial court, and was found valid on appeal by this Court. Through 9 years of vexatious litigation, which included defenses based upon false affidavits on issues that had been decided by the trial court and by this Court, 3 motions to recuse judges in the case, 2 petitions for writ of prohibition, and 5 appeals, the Visolys delayed foreclosure causing the properties to be run by receivers and generating unnecessary litigation expenses.
Even after sanctions were imposed in the form of fees assessed against both the Visolys and their trial counsel, the seemingly endless barrage continues. The Visolys and their appellate counsel must recognize that enough is enough.
We stress that the vast majority of appeals which pass through this Court are worthy of review and present issues that genuinely reflect gaps in case law or require application of statutes and rules to peculiar set of facts. However, we would be remiss in our duties as judges if we failed to underscore our lack of tolerance for that small percentage of cases which drain judicial resources and result in unnecessary litigation expenses. The procedural history of this case reflects an abuse of legal processes which demands a more detailed review, and clear message that frivolous appeals will be sanctioned.

Background Facts
Aviad Visoly ("Aviad"), individually and on behalf of all shareholders of Westburry Shoppes Corporation ("Westburry"), filed suit in 1990 against appellant Security Pacific, Westburry's president Ralph Bodek ("Bodek"), and Westburry's secretary, Joseph Hooper ("Hooper"). Aviad claimed the mortgage held by Security Pacific on a shopping center owned by Westburry Shoppes was void. Counsel for both the Visolys and Westburry was attorney Bruce Friedlander.
Aviad's complaint was stricken as a sham and the action was dismissed with prejudice, after Aviad admitted on deposition that he did not own any stock in Westburry, and that Bodek had signed the mortgage. The trial judge's order specifically found that Westburry's shareholders had properly authorized its president to execute the mortgage.
In the interim, the Westburry mortgage had gone into default and Security Pacific filed suit to foreclose. Prior to Westburry filing any pleadings in the foreclosure, Aviad entered into a settlement agreement with Westburry, Bodek, and Hooper. The agreement acknowledged that all of the Westburry stock was owned by Hooper and Bodek, and that a foreclosure suit had been filed by Security Pacific on the shopping center. The parties agreed to allow Aviad to take judgment against Westburry in the amount of $206,304.94.[1]
*486 Three months later in May of 1991, the Visolys' then lawyer, Ivan Benjamin,[2] filed a counterclaim against Security Pacific for cancellation of the mortgage. In support of the allegations in the counterclaim, the Visolys filed individual affidavits in which each claimed to have owned 50% of the stock of the corporation. Each affidavit further claimed that Bodek, who signed the mortgage, was not the company's president, and had forged certificates of the company's stock. This position not only contradicted the trial judges' findings in the order striking the Visolys' complaint for sham, but was also contrary to the position the Visolys took when they sought to cancel the mortgage, and in the settlement agreement.[3]
For the next 4½ years until a final judgment of foreclosure was finally entered, the Visolys engaged in a series of delay tactics. The Visolys filed motions to recuse the three trial judges who heard the case, accompanied by their own affidavits of prejudice, took petitions for prohibition to this Court when their motions were denied, had their lawyers file motions to withdraw, and while the motions were pending, had their lawyers file notices of vacation on their behalf individually. Miri wrote letters to the trial judge accusing Security Pacific's lawyers of assault and battery, and both Visolys moved for a two month extension of time to obtain new counsel because of "the complexity of the issues and the voluminous record in this case". They then had a new lawyer, Itzhak Bachar, appear on their behalf individually. Bachar later filed a motion to withdraw because he was not being paid.
In December of 1995, the trial court entered its final judgment of foreclosure. Security Pacific's assignee then filed a motion for an order directing the receiver to turn over the funds it had collected during the five years the matter had been in litigation. The Visolys opposed the motion through a succession of lawyers, pro se pleadings, and questionable tactics.[4] At one point, an order was entered in October of 1996, granting attorney Bachar's second motion to withdraw from the case, and specifying that future pleadings were to be forwarded to the Visolys at their post office box address in Hallandale. The Visolys in the interim had moved to Israel.

*487 The Motion For Attorney's FeesRound 1

In January of 1997, the trial court entered an order to disburse all the remaining funds in the receivership account. Thereafter, Security Pacific filed a motion for attorney's fees pursuant to Section 57.105, Florida Statutes (1997), against attorney Friedlander, against Aviad and Miri, individually, and also against Westburry.[5] In November of 1997, the motion for attorney's fees was granted as to Westburry and the Visolys, but was denied as to attorney Friedlander.[6]
Security Pacific appealed the denial of fees as to attorney Friedlander, and this Court reversed finding that: "When Friedlander entered this case, his client's claims had already been struck down by the trial court in another action as a sham. Thus, it was clear that these claims lacked any justiciable issue, were devoid of merit and were completely untenable.... Accordingly, Friedlander cannot claim good faith under section 57.105 and the trial court should have granted SPCC attorney's fees." See Security Pacific Credit Corp. v. Oasis Plaza Corp., 714 So.2d 1039, 1040 (Fla. 3d DCA), review denied 728 So.2d 201 (Fla.1998).
The Visolys then obtained another lawyer who appeared "specially" and moved to set aside the November order on attorney's fees, claiming the Visolys had not been properly served.[7] Although the motion and notice of hearing were mailed to the Visolys' post office box number as specified in a prior court order, the trial judge granted the Motion.[8] The order imposing attorney's fees was set aside for failure to properly serve the Visolys in Israel, and the trial court directed that the motion for attorney's fees would be treated as a third-party claim.

*488 The Motion For Attorney's FeesRound 2

Security Pacific then re-served the Visolys under the Non-Resident Businessman's Statute. See § 48.181, Fla. Stat. (1999). Copies of process were mailed to the Secretary of State and also by certified mail to the Visolys' post office boxes in both Haifa, Israel, and Hallandale, Florida, their only known addresses. In the meantime, the Visolys hired yet another attorney who filed a motion to dismiss the third-party complaint and to quash service of process. The trial court denied the motion, the Visolys' appealed, and this Court affirmed.[9]
Three hearings were held on the motion for attorney's fees over a three month period. During the course of these hearings, the Visolys tried to sue Security Pacific's lawyers and filed an additional verified motion to disqualify the trial judge on grounds of prejudice.
The Visolys' current counsel, Litwin, appeared at the November hearing. He argued that the hearing should not proceed claiming that he did not receive a notice of trial, his client did not receive proper notice, and that he had just entered the case a week earlier. After the trial court noted these positions were incorrect,[10] the trial court cautioned Litwin:
"[Y]ou want to reset this hearing so that you can prepare for this motion for attorneys' fees? Is that what you're asking this Court, because, you know, I think that you are exposing yourself with another 57.105 motion from the other side because we are in the middle of a hearing and Mr. Lowy raised this issue months ago ... [T]his has [already] gone up. The Third District has said that I have to assess attorneys' fees in this case. They reversed me on the denial of attorneys' fees against Mr. Friedlander and I'm just telling you as a warning that we may be entering 57.105 to you personally so if you want to reset this thing, we can reset this thing."
The hearing proceeded, despite the obvious obfuscation of issues and blatant delay tactics.[11] Testimony was taken and after a *489 continued third hearing on the motion, the trial judge entered an order assessing attorney's fees in the amount of $347,321.75, and found:
"4. Aviad Visoly and later his wife, Miri Mayost, filed affidavits in this cause claiming to have been shareholders of Westburry at the time that the mortgage was void. This Court finds that position to be a complete sham. The validity of the mortgage had already been established. Aviad Visoly had testified in the earlier lawsuit that the mortgage was executed by the President of Westburry Shoppes Corporation and had admitted he owned no stock in the corporation. Further, Miri Mayost, had assigned all of her stock in the corporation prior to the execution of the mortgage.
5. Through eight (8) years of litigation, three (3) Motions to Recuse, two (2) petitions for Prohibition filed in the Third District Court of Appeal and five (5) appeals, Aviad Visoly and Miri Mayost using the Westburry Shoppes Corporation shell delayed foreclosure of the mortgage asserting positions which were plainly sham and frivolous."
The Visolys then proceeded to file their 6th appeal in these proceedings.

Appeal Number 6
In "Appeal Number 6", the Visolys claim the order assessing attorney's fees against them should be reversed because it violates their due process rights. Specifically, they allege that since they were not named parties, the trial court lacked jurisdiction over them individually, and thus they cannot be found liable for Security Pacific's attorney's fees.
A "party" is defined under Florida law as any person who participates in litigation regardless of whether or not actually named in the pleadings:
[The] word party includes one concerned with, conducting, or taking part in any matter or proceeding, whether he is named or not. Fong Sik Leung v. Dulles, 226 F.2d 74, 81 (9th Cir.1955). `Parties include, not only those whose names appear upon the record, but all others who participate in the litigation by employing counsel, or by contributing towards the expenses thereof, or who, in any manner, have such control thereof as to be entitled to direct the course of [the] proceedings....' Theller v. Hershey, 89 F. 575 (C.C.N.D.Cal.1898)."
Lage v. Blanco, 521 So.2d 299, 300 (Fla. 3d DCA), review denied, 531 So.2d 1354 (Fla. 1988). See also, ECOS, Inc. v. Brinegar, 671 F.Supp. 381 (M.D.N.C.1987)(applicant for intervention who participates in proceedings may be treated as a party even though no formal order granting intervention has been entered); Florida Ass'n of Nurse Anesthetists v. Dep't of Prof. Reg., 500 So.2d 324 (Fla. 1st DCA 1986)(association which filed response and memorandum of law in administrative proceedings was a "party" to proceedings); Kaiser Aerospace and Electronics Corp. v. Teledyne Indus., Inc., 229 B.R. 860 (S.D.Fla. 1999)(a participant in a confirmed reorganization plan who has a direct interest in the subject matter is considered a "party").
The above detailed facts clearly reflect the Visolys were "parties" in this litigation. By initiating numerous legal proceedings and filing countless documents in court, the Visolys personally, and through their counsel, clearly participated in the litigation and contributed to the expenses thereof. The record thus supports the trial court's finding that the Visolys were "parties." See Lage v. Blanco, 521 So.2d at 299.
We further find that the record supports the trial court's assessment of attorney's fees against the Visolys in the proceedings below. A court "shall" award attorney's fees to the prevailing party where there is an absence of justiciable issue of either law or fact. See Mixson v. Hyatt, 557 So.2d 608 (Fla. 3d DCA), review denied, 574 So.2d 142 (Fla.1990); *490 Muckerman v. Burris, 553 So.2d 1300 (Fla. 3d DCA 1989), review denied 567 So.2d 435 (Fla.1990); Wood v. Price, 546 So.2d 88 (Fla. 2d DCA), review denied, 553 So.2d 1166 (Fla.1989); Puder v. Raymond Int'l Builders, Inc., 424 So.2d 78 (Fla. 3d DCA 1982), review denied, 434 So.2d 888 (Fla.1983). Under Section 57.105, Florida Statutes (1999), the losing party and the losing party's counsel are equally responsible for the payment of fees unless the losing party's counsel has acted in good faith, based upon the factual representations of his or her client.[12]See Morrone v. State Farm Fire and Cas. Ins. Co., 664 So.2d 972 (Fla. 4th DCA 1995); Khoury v. Estate of Kashey, 533 So.2d 908 (Fla. 3rd DCA 1988).
Here, the trial court found the Visolys used Westburry as a shell to delay foreclosure of the mortgage through asserting positions which were "plainly sham and frivolous" on the facts and law. This finding is supported by the record, and thus we find fees were correctly assessed. See DiStefano Constr., Inc. v. Fidelity and Deposit Co. of Maryland, 597 So.2d 248 (Fla.1992); Whitten v. Progressive Cas. Ins. Co., 410 So.2d 501 (Fla.1982), receded from in part on other grounds, Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985); Simkins Indus., Inc. v. Lawyers Title Ins., 696 So.2d 384 (Fla. 3d DCA 1997); Demby v. English, 667 So.2d 350 (Fla. 1st DCA 1995); Wright v. Acierno, 437 So.2d 242 (Fla. 5th DCA 1983).
We next address the issue of the attorney's fees generated in this appeal. In Florida, appellate attorney's fees may be assessed against a party and their counsel for filing a frivolous appeal pursuant to Section 57.105, Florida Statutes (1999), and Florida Rules of Appellate Procedure 9.410.[13]See T.I.E. Communications, Inc. v. Toyota Motors Ctr., Inc., 391 So.2d 697 (Fla. 3d DCA 1980).
An appeal is defined as frivolous if it presents no justiciable question and is so devoid of merit on the face of the record that there is little prospect it will ever *491 succeed. See Treat v. State ex rel. Mitton, 121 Fla. 509, 163 So. 883 (1935); Procacci Commercial Realty, Inc. v. Dep't of Health and Rehabilitative Services, 690 So.2d 603 (Fla. 1st DCA 1997); Brahmbhatt v. Allstate Indem. Co., 655 So.2d 1264 (Fla. 4th DCA 1995); Tiedeman v. City of Miami, 529 So.2d 1266 (Fla. 3d DCA 1988).
We recognize that to some extent, the definition of "frivolous" is incapable of precise determination.[14] Nevertheless, a review of Florida caselaw reveals there are established guidelines for determining when an action is frivolous. These include where a case is found: (a) to be completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (b) to be contradicted by overwhelming evidence; (c) as having been undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (c) as asserting material factual statements that are false.[15]
For example, in Brahmbhatt v. Allstate Indem. Co., 655 So.2d at 1264, an appeal was held frivolous because established case law contradicted the appellant/personal representative's argument with regard to the existence of uninsured motorist coverage where the insured was murdered after leaving his car to help a stranded motorist. In Procacci Commercial Realty, Inc. v. Dep't of Health and Rehabilitative Services, 690 So.2d at 603, an appeal was held frivolous because the facts at trial clearly contradicted the appellant/unsuccessful bidder's position that the successful bidder lacked the requisite number of parking spaces.[16]
In sum, an appeal which lacks a factual basis or well-grounded legal argument will be considered devoid of merit. See T.I.E. Communications, Inc. v. Toyota Motors Ctr., Inc., 391 So.2d at 697. In other words, a "frivolous" appeal is one which raises arguments a reasonable lawyer would either know are not well grounded in fact, or would know are not warranted either by existing law or by a reasonable argument for the extension, modification, or reversal of existing law.
As discussed above, it is clear that the positions asserted by the Visolys were devoid of merit and responsible for the unnecessary litigation costs. The overwhelming evidence established through 9 *492 years of litigation that the Visolys actively participated in filing voluminous pleadings, presenting evidence at hearings, and filing several notices of appeal. The Visolys clearly were parties in the litigation and the issues raised on appeal are neither supported by the record, cogent argument, nor pertinent legal authority.
Given the facts and controlling legal authority, we conclude that the arguments raised by the Visolys in this appeal are manifestly frivolous. See New England Rare Coin Galleries, Inc. v. Robertson, 506 So.2d 1161 (Fla. 3d DCA 1987); Freixas v. Buena Vista Lakes Condominium Ass'n., 559 So.2d 1184 (Fla. 3d DCA 1990); Galbraith v. Inglese, 402 So.2d 574 (Fla. 4th DCA 1981); T.I.E. Communications, Inc. v. Toyota Motors Center, Inc., 391 So.2d at 697. Accordingly, we grant Security Pacific's motion for appellate attorney's fees as a sanction for the filing of a frivolous appeal. See Morrone v. State Farm Fire and Cas. Ins. Co., 664 So.2d 972 (Fla. 4th DCA 1995); Brahmbhatt v. Allstate Indem. Co., 655 So.2d at 1264; Branch v. Charlotte County, 627 So.2d 577 (Fla. 2d DCA 1993).

Appellate Attorney's Fees: Who Shall Pay?
The final issue we must consider in imposing appellate attorney's fees as a sanction is who should pay for them. We may order a litigant, his attorney, or both to pay sanctions on appeal. See § 57.105, Fla. Stat. (1999); Fla. R.App. P. 9.410.
The general policy behind awarding attorney's fees for bringing a frivolous action is to discourage baseless claims, stonewall defenses, and sham appeals by sanctioning those responsible for unnecessary litigation costs. See Thornber v. City of Fort Walton Beach, 568 So.2d 914 (Fla. 1990); Whitten v. Progressive Cas. Ins. Co., 410 So.2d at 501; Wood v. Price, 546 So.2d 88 (Fla. 2d DCA 1989).
In cases where an attorney has relied in good faith upon representations of his or her client, and thus seemingly pursued a valid legal claim based upon those representations, it makes sense that the client should be solely responsible for paying fees assessed as a sanction. This is logical because the basis of the lack of merit resulting in the sanction, is solely attributable to the client's incorrect representations. However, where the facts and established case law would clearly reflect the lack of a justiciable issue to a reasonable attorney, counsel also is culpable and must accept responsibility for the sanction.
The privilege to practice law requires attorneys to conduct themselves in a manner compatible with the administration of justice. While counsel does have an obligation to be faithful to their clients' lawful objectives, that obligation cannot be used to justify unprofessional conduct by elevating the perceived duty of zealous representation over all other duties. See P.T.S. Trading Corp. v. Habie, 673 So.2d 498 (Fla. 4th DCA 1996)(fees awarded for abuse of process, quoting Rules Regulating the Florida Bar, Rule 4-3.1). Counsel has a concurrent duty to the legal system and the public good to ensure appeals are pursued in good faith and are not frivolous. See R. Regulating Fla. Bar 4-3.1, ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous ...."); see also R. Regulating Fla. Bar 4-3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.").
Therefore, when an attorney is solicited to pursue an appeal that is devoid of merit, he or she has a duty to advise the client of the potential for sanctions, and that it would be unethical for the attorney to go forward with frivolous appellate proceedings. As officers of the court and members of the bar, attorneys have an ethical and professional responsibility to withdraw from representation rather than to pursue a frivolous appeal.
*493 Since unprofessionalism can exist only to the extent it is tolerated by the courts, we emphasize that attorney's fees will be assessed as a sanction against appellate counsel to deter members of the bar from pursuing appeals which clearly lack merit. Our further purpose is to achieve the just result of compensating the nonappealing party for the expense of having to defend spurious appeals, and to preserve the appellate calendar for cases truly worthy of consideration.
Keeping these principles in mind, we find that the Visolys' appellate counsel, Avi Litwin, bears considerable responsibility for the unnecessary litigation costs in this frivolous appeal.[17] Not only in light of the substantial history of this case and the overwhelming evidence contradicting the Visolys' positions,[18] but also because the issues asserted on appeal are contradicted by established case law. Counsel and the Visolys are jointly liable for Security Pacific's appellate attorney's fees, as both are responsible for the pursuit of this frivolous appeal which lacks substance or reason.
Accordingly, we affirm the order below, grant Security Pacific's motion for attorney's fees in the appellate proceedings, and remand with instructions to the trial court to determine the proper amount.
Affirmed; motion for appellate attorney's fees granted, and cause remanded with instructions.
NOTES
[1] The agreement further provided:

"The parties hereto are cognizant of the fact of the existence of the foreclosure suit filed by S.P.C.C. as against both OASIS PLAZA CORPORATION AND WESTBURRY SHOPPES CORPORATION. The parties agree that WESTBURRY, by VISOLY and his counsel shall defend that lawsuit on behalf of that said corporation and BODEK and his representative on behalf of OASIS PLAZA CORPORATION shall defend as well...."
[2] Ivan Benjamin was replaced by Bruce Friedlander who was replaced by Itzhak Bachar and Sheldon Zipkin who were replaced by Avi Litwin. This list is not all inclusive. Lawyers appeared for a month, two months, three months, and then exited leaving a few pleadings behind.
[3] The Visolys specifically acknowledged in the settlement agreement:

"The parties hereto agree that in settlement of all claims as may exist as between AVIAD VISOLY and RALPH BODEK and JOSEPH R. HOOPER, the said RALPH BODEK and JOSEPH R. HOOPER agree to contemporaneously transfer all right, title and interest to the shares held by them in WESTBURRY SHOPPES CORPORATION. RALPH BODEK presently holds sixty percent (60%) of the issues and outstanding shares of the corporation and JOSEPH R. HOOPER presently owns and holds twenty percent (20%) of the issues and outstanding shares of the corporation, with the balance of twenty percent (20%) of the authorized shares of the corporation ever having been issued...."
[4] Attorney Bachar (the lawyer who had earlier filed an appearance for Aviad and Miri, individually, and who had earlier filed a motion to withdraw,) filed a notice that he would be unavailable for any hearings set between June 12, 1996 and July 6, 1996, and requested a continuance. On September 11, 1996 Bachar filed a second motion to withdraw as attorney for Aviad and Miri, individually. Thereafter, the trial judge entered an order permitting attorney Bruce Friedlander to withdraw as attorney for Westburry. In November of 1996, attorney Sheldon Zipkin filed his notice of appearance on behalf of Westburry.
[5] As to the Visolys individually, the motion asserted:

"Aviad Visoly and Miri Mayost, the real parties in interest, using an insolvent corporation, Westburry Shoppes Corporation, filed false affidavits blocking summary judgments and caused the property to be run in receivership for over four years before a judgment of foreclosure could be entered. To permit any of these parties to walk away from this litigation without an award of attorney's fees being made against them in light of the facts of this case, would be a disgrace...."
[6] The trial court's order assessed attorney's fees on the basis of Section 57.105, and found a complete absence of justiciable issues of either fact or law in the arguments advanced by the Visolys. In the words of the trial court:

"[T]his court easily finds that defendants Visoly and Mayost are liable for plaintiff's attorneys fees because at all relevant times they have known that their allegations were completely false. In other words, defendants Visoly, Mayost, and WSC attempted to advance claims and legal arguments that were without any legal merit or basis in fact. This behavior is exactly the type of behavior proscribed by section 57.105 and the case law interpreting it. This conclusion is supported by the fact that the court in Case No. 90-22397 struck their pleadings as sham. Subsequently, in the instant action, the defendants raised the identical arguments to forestall the pending suit. Their bad faith has been readily apparent throughout this entire proceeding as evidenced by the re-allegation of sham arguments and the filing of false affidavits.
[7] This attorney, Ronald Lowy, employed current counsel, Avi Litwin, to assist in the preparation of pleadings to set aside the order on attorney's fees. Despite this fact, almost a year later, at a November 1998 hearing on attorney's fees, Mr. Litwin represented to the trial court that "he just came into the case" a week earlier and argued it would be improper for the scheduled hearing to proceed. A review of the transcript of the proceedings reveals Mr. Litwin's representations in this regard were, at the least, initially misleading.
[8] Previously in October of 1996, the trial court had granted attorney Bachar's second motion to withdraw from the case, and specified that future pleadings were to be forwarded to the Visolys at their post office box address in Hallandale. After the service of process argument was raised, Security Pacific filed an affidavit of the officer in charge of the Hallandale Post Office Branch attesting to the fact that the post office box was authorized to accept mail for Aviad Visoly and Miri Mayost.
[9] This appeal was filed on behalf of the Visolys by current attorney Avi Litwin. During the course of the appellate proceedings, the Visolys sought to immunize themselves from service of process and filed a motion to stay the order denying their motion to dismiss. The motion to stay was denied by the trial court. The Visolys' emergency motion to this Court for review of the order denying stay was also denied. This Court affirmed the denial of the Visolys' motion. See Visoly v. Security Pacific Credit Corp., 728 So.2d 232 (Fla. 3d DCA 1999).
[10] Litwin had previously worked on the Visolys' case while employed as an associate with the Visolys' prior counsel, attorney Lowy. See supra note 7. Thus, at the least, the suggestion that he had "just entered" the case a week earlier was misleading. After explaining to Litwin that on a hearing for attorneys' fees, all that is required is a motionnot a notice for trial, the trial court further pointed out that Litwin did appear at the hearing on behalf of the Visolys and thus obviously received notice:

"MR. LITWIN: ... Your Honor, if I could state for the record very quickly so it's on record as to what my objections are for going forward with this hearing without proper notice to Miri Visoly
THE COURT: You are representing her and you are here. How can you complain that you didn't get notice? You're here.
MR. LITWIN: I am noticed here, Your Honor, because there's a notice of hearing for motions pending. Therefore, I'm appearing here for the motions pending.
THE COURT: You mean to tell me you don't know we're doing a motion for attorneys' fees here today? Is that your representation as an officer of the Court?
. . .
THE COURT: As an officer of the Court you are representing to me that you had no idea that today was a continuation of a motion for attorneys' fees...."
[11] After unsuccessfully attempting to focus Litwin on the issues in the case in order to conclude the proceedings, the trial court noted: "The record will reflect there's a 30 second gap between each answer and the next question and at that rate we could be here for 20,30 hours." Counsel for Security Pacific responded: "This is the same thing that has happened for nine years now." The hearing was again continued.
[12] Section 57.105, Florida Statutes (1999) provides, in pertinent part:

"(1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
(a) Was not supported by the material facts necessary to establish the claim or defense; or
(b) Would not be supported by the application of then-existing law to those material facts. However, the losing party's attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts. If the court awards attorney's fees to a claimant pursuant to this subsection, the court shall also award prejudgment interest.
(2) Paragraph (1)(b) does not apply if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.
(3) At any time in any civil proceeding or action in which the moving party proves by a preponderance of the evidence that any action taken by the opposing party, including, but not limited to, the filing of any pleading or part thereof, the assertion of or response to any discovery demand, the assertion of any claim or defense, or the response to any request by any other party, was taken primarily for the purpose of unreasonable delay, the court shall award damages to the moving party for its reasonable expenses incurred in obtaining the order, which may include attorney's fees, and other loss resulting from the improper delay."
[13] Rule 9.410 provides for an award of attorney's fees as a sanction for any violation of the Florida Rules of Appellate Procedure, "or for filing any proceeding, motion, brief, or other paper that is frivolous or in bad faith." See Wood-Cohan v. Prudential Ins. Co. of Am., 715 So.2d 999 (Fla. 4th DCA 1998).
[14] As noted by one court:

"Court opinions on attorney's fees speak easily of cases being either frivolous or non-frivolous, as if all cases fit easily into one or the other category. Reality is more complicated. In the legal world, claims span the entire continuum from overwhelmingly strong to outrageously weak. Somewhere between these two points, courts draw a line to separate the nonfrivolous from the frivolous, the former category providing safe shelter, the latter subjecting attorney and client to sanctions."
Eastway Constr. Corp. v. City of New York, 637 F.Supp. 558, 574 (E.D.N.Y.1986). See also, Robert G. Bone, Modeling Frivolous Suits, 145 U.Pa.L.Rev. 519, 529 (1997)("Most commentators use the term `frivolous suit' without defining it, as if the meaning were obvious to all. But the concept is quite slippery.")
[15] For a detailed discussion of the differing standards applied by courts in other jurisdictions, see Byron C. Keeling, Toward a Balanced Approach to "Frivolous" Litigation: a Critical Review of Federal Rule 11 and State Sanctions Provisions, 21 Pepp.L.Rev. 1067 (1994).
[16] In Procacci Commercial Realty, Inc., attorney's fees were assessed against the appellant/unsuccessful bidder for filing a meritless lawsuit because the allegation that the successful bidder lacked the required number of parking spaces was clearly contrary to the evidence. The appellant then filed an appeal. The appeals court affirmed the lower court's ruling and further found the appeal frivolous and the appellant responsible for appellate attorney's fees because "the appellant's principal strategy has been to `reargue the facts previously presented to the lower [tribunal]'." Procacci Commercial Realty, Inc. v. Dep't of Health and Rehabilitative Services, 690 So.2d 603 (Fla. 1st DCA 1997) (citing Branch v. Charlotte County, 627 So.2d 577, 579 (Fla. 2d DCA 1993).
[17] Because of our additional concerns regarding potential ethical violations, we further direct the Clerk of this Court to provide a copy of this opinion to the Florida Bar. See 5-H Corp. v. Padovano, 708 So.2d 244 (Fla. 1997); Fla.Code Jud. Conduct, Canon 3D(2).
[18] The enormous amount of money in litigating this case resulted from false and sham affidavits filed by the Visolys, and a massive legal offensive which included attempting to sue opposing counsel, attacking the trial judge with motions to recuse, and essentially turning legal proceedings into a circus by attempting to use the process of the courts, which ought do justice, to force a settlement from a California Bank who did nothing but make a mortgage in Dade County, Florida. We suspect the filing of this appeal was yet another disingenuous attempt to delay payment of a valid judgment. We feel it necessary to again reiterate:

"[I]t is no longerif it ever wasacceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which parties may fight it out on unseemly terms of their own choosing, and then, on the ground that the loser has asked for what he received, obediently raise the hand of the one who emerges victorious. We demean ourselves and the system of justice we serve when we permit this to occur."
Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), review denied, 488 So.2d 832 (Fla. 1986). We remind counsel also of the dictates of Rule 4-3.2, and the Comment to Rule 4-3.2, Rules Regulating the Florida Bar, which states: "Dilatory practices bring the administration of justice into disrepute. Delay should not be indulged merely for the convenience of the advocates or for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose."