998 So.2d 651 (2008)
Nelson Julio HERNANDEZ, Appellant,
v.
Maria de los Angeles GIL, Appellee.
No. 3D08-05.
District Court of Appeal of Florida, Third District.
December 10, 2008.
*652 Alba Varela, Miami, for appellant.
Gutter Chaves Josepher Rubin Forman Fleisher, P.A., and Norman A. Fleisher, Boca Raton, for appellee.
Before SHEPHERD and SALTER, JJ., and SCHWARTZ, Senior Judge.
SALTER, J.
Appellant Nelson Julio Hernandez appeals an order and amended order holding him in contempt for violating Florida probate court orders in a cross-border dispute pertaining to his late parents' wills and trusts. We affirm the orders. Although the arguments raised by the appellant below and here are meritless and would ordinarily prompt a per curiam affirmance, the role and actions of Hernandez's counsel warrant attention.

Background
In 1999, Hernandez's parents executed wills and irrevocable trusts disposing of their property in Florida and Puerto Rico. The appellee, Maria de los Angeles Gil, was designated to serve as the personal representative under the wills and as trustee of the family trust. Hernandez's father passed away, and a Florida probate proceeding was opened in 2001. In accordance with the terms of the will, the appellee was appointed personal representative. Hernandez commenced an adversary proceeding against the appellee in the Florida probate court in 2002, thereby unquestionably submitting himself to the jurisdiction of that court.[1]
The 2002 adversary proceeding was settled later that year in a detailed and confidential "Global Settlement Agreement" (GSA) executed by Hernandez, the appellee, another family member, and counsel for each of them. Hernandez received a substantial payment, certain Florida real estate, certain jewelry, and an automobile. He agreed to provide a special power of attorney and an assignment to his mother of any and all interest, right, and entitlement to either parent's estate, the irrevocable trust, and any other trust that might be created by or on behalf of either parent. These assignments expressly pertained to *653 rights and interests "in Florida, Puerto Rico, or in any other jurisdiction."[2] Hernandez further agreed that Florida law would govern the GSA and its performance and enforcement.[3]
The parties exchanged releases in connection with the GSA (including Hernandez's release of any rights to contest any wills or trusts his mother might later create), and Hernandez also agreed "to execute any and all documents necessary to effectuate the purpose of this Agreement and to record, file, and publish any documents or instruments that may be necessary." The GSA was duly approved by the Florida probate court in December 2002, in an order which included retention of jurisdiction "over the parties for the purpose of enforcing the terms of the settlement agreement."
Notwithstanding the clarity of the GSA and his receipt of the very substantial cash and property transferred to him pursuant to that agreement, Hernandez attempted the proverbial "better deal" following his mother's death by contesting her estate plan, commencing a lawsuit in Puerto Rico, and notifying third parties holding trust assets under the estate plan that Hernandez claimed an interest in those assets. In 2004, the appellee moved for and obtained a Florida probate court order enforcing the GSA, denying Hernandez's motion to transfer venue of the estate to Puerto Rico, and rejecting his claim that the Civil Code of Puerto Rico should control any disputes regarding the assets there. Hernandez appealed the Florida enforcement order and lost.[4]
Apparently undaunted, Hernandez refused to dismiss and continued to prosecute lawsuits against the appellee in Florida and in Puerto Rico. In 2006, the Florida probate court again ordered Hernandez to comply with the GSA and related settlement documents by dismissing those lawsuits. Hernandez appealed again and lost again.[5] Importantly, this order included a warning to Hernandez and to his attorneys: in the event of further non-compliance, "the Court will set a hearing to consider a monetary sanction to be assessed equally against [Hernandez] and his attorneys." (Emphasis added).
Undeterred, or perhaps ignoring legal advice and common sense, Hernandez did not dismiss either case and, in fact, continued to prosecute the lawsuit against the appellee in Puerto Rico. The appellee moved in the Florida probate proceeding to hold Hernandez in contempt, and for monetary sanctions, in 2007. The Florida probate court granted these motions in the order and amended order sought to be reviewed here. The probate court graciously allowed Hernandez two weeks within which to purge the contempt by dismissing the lawsuits, but specified that a fine of $50,000, plus $10,000 per day after the end of the purge period, would be imposed for non-compliance. The court also directed Hernandez to show cause *654 why a writ of bodily attachment should not be issued against him for further non-compliance and reserved ruling on imposing financial sanctions against his counsel.[6]
We need not address Hernandez's latest arguments here, as the law relating to the direct and willful disobedience of court orders is well settled, and Hernandez's "conflict of laws" and GSA interpretive issues were adjudicated adversely to him in Hernandez I and Hernandez II. As noted, we instead address the role played by Hernandez's latest counsel below and here.

"Zealousness" Does Not Include the Violation of Court Orders
Zealousness, aggressiveness, and persistence are widely considered to be commendable qualities in trial lawyers. The Preamble to Chapter 4, "Rules of Professional Conduct," in the Rules Regulating The Florida Bar, includes this statement: "As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." The "rules of the adversary system" include obedience to orders entered by a court of competent jurisdiction.
The oath of admission to The Florida Bar omits any reference to "zealousness," but does, of course, prohibit an attorney from counseling or maintaining any suit or proceeding that is unjust, from disrespecting a court or judicial officer, and from raising any defense that is not "honestly debatable under the law of the land." In this case, there could be no further "honest debate" or good faith argument regarding the Florida probate court's directive. The order enforcing the GSA and affirmed by us in Hernandez II clearly admonished the reader that a violation of the order would invite sanctions "to be assessed equally against [Hernandez] and his attorneys." Although Hernandez's current counsel was not his attorney in 2006 when the sanctions order was entered, that very provision was restated in the 2007 motion for contempt and sanctions defended by his current counsel. As a result, current counsel's plea that she did not represent the appellant for the last four years the case was pending does not excuse her decision to advance, again, arguments previously adjudicated and "finally final."
Similarly, her assertions that her predecessor counsel failed "to highlight the inequities of this cause," or that she thought she had negotiated a verbal settlement agreement with opposing counsel,[7] do not excuse her decision to counsel her client to engage, and decision to participate herself as advocate, in continued direct disobedience of unstayed court orders.
We believe that this opinion and the monetary sanctions that will follow provide an adequate lesson on when to decline *655 representation and to counsel a client to comply with a court's directives. "Just say no" applies to some clients and matters, just as to drugs.[8]
By separate order we have granted the appellee's motion for appellate attorney's fees and costs against both Hernandez and his counsel, and we have remanded that matter to the probate court for a determination of the amount of fees and costs to be awarded. We grant the motion on multiple grounds. Such fees and costs are themselves a damage resulting from breaches of the GSA. An entitlement to further fees and costs as a sanction was also included in the 2006 order. Finally, this is also one of those rare cases in which this Court itself, exercising its authority under section 57.105, Florida Statutes (2007), has determined that Hernandez and his current counsel have advanced arguments that a reasonable lawyer would know are not well grounded in fact and are not supported by existing law (or by a reasonable argument for the extension, modification, or reversal of existing law). See Visoly v. Sec. Pac. Credit Corp., 768 So.2d 482 (Fla. 3d DCA 2000); R. Regulating Fla. Bar 4-3.1.
Affirmed.
NOTES
[1] Hernandez also provided a Wellington, Florida residential notice address and expressly acceded to the Florida court's jurisdiction by entering into the 2002 Global Settlement Agreement with the appellee and others.
[2] Hernandez and the other parties also expressly agreed that the GSA was a "binding, final, and irrevocable global settlement" among the parties. (Emphasis added).
[3] Puerto Rican law, however, was to govern any probate proceeding involving Hernandez's father's estate brought in Puerto Rico. This special governing law provision did not, however, limit Hernandez's duties to convey property in Puerto Rico as required by the GSA or to refrain from litigation against his mother's estate, trust, or assets.
[4] Hernandez v. Gil, 907 So.2d 537 (Fla. 3d DCA 2005) ("Hernandez I").
[5] Hernandez v. Gil, 958 So.2d 390 (Fla. 3d DCA 2007) ("Hernandez II").
[6] Hernandez has employed several different law firms over the six-year course of these proceedings. His current attorney commenced her representation with the 2007 motion for contempt and this appeal.
[7] This point is equally troublesome. It was initially raised in Hernandez's motion to remove the case from the argument calendar on grounds of settlement, faxed to the court at 3 p.m. the day before the long-scheduled oral argument. Concerned by the fact that the motion recited an inability to confirm the appellee's consent, the deputy clerk called the appellee's counsel and learned that (a) he had not yet received the motion and (b) no settlement had been reached. The appellee's counsel therefore immediately faxed to the court an opposition to Hernandez's motion. Hernandez's counsel then filed a reply that the settlement negotiations must have been "initiated by the Appellee in bad faith to prevent proper preparation and presentation for oral argument before this Court."
[8] At oral argument, we also recommended to Hernandez's counsel the advisability of taking difficult ethical questions to an experienced mentor for a second opinion. The Florida Bar's Henry Latimer Center for Professionalism has established such a program for law students, and local initiatives are underway to make qualified mentors available to all practitioners. The Bar's toll-free ethics hotline is also a good resource for these situations.