699 So.2d 679 (1997)
Aubrey D. WHITEHURST, Jr., et ux., Petitioners,
v.
Charles E. CAMP, et ux., Respondents.
No. 88949.
Supreme Court of Florida.
September 4, 1997.
Bill A. Corbin, Blountstown, for Petitioners.
No appearance, for Respondents.
*680 Barry Kalmanson, P.A., Maitland, for Roger's Cushions, Inc., Amicus Curiae.
PER CURIAM.
We have for review Whitehurst v. Camp, 677 So.2d 1361 (Fla. 1st DCA 1996), which certified conflict with the opinion in Gevertz v. Gevertz, 608 So.2d 129 (Fla. 3d DCA 1992). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we approve Whitehurst, disapprove Gevertz, and hold that unless a contract's terms explicitly provide for a specific interest rate to apply to a judgment entered on the debt, the contractual interest rate terminates at judgment and the postjudgment interest rate will be determined by statute.

FACTS
Respondents Charles and Glenda Camp (the Camps) purchased certain real and personal property from petitioners Aubrey and Mary Whitehurst (the Whitehursts). Whitehurst, 677 So.2d at 1362. The purchases were the subject of an agreement for deed between the parties. The agreement provided that the Camps would pay the Whitehursts "Four Hundred Fifty Thousand and no/100 Dollars ($450,000.00) ... with interest at the rate of 10 per centum (10%) per annum payable on the whole sum remaining from time to time unpaid." Id. This agreement contained no provision expressly governing the rate of interest on any judgment entered pursuant to it. Id.
After the Whitehursts initiated foreclosure proceedings against the Camps, a final summary judgment was entered in their favor. Despite prevailing in the trial court, the Whitehursts appealed the judgment to the First District. They argued that the trial court erred in not using the so-called "fast track" procedure for foreclosures; in using the statutory postjudgment interest rate of 8% rather than the 10% interest rate established in the agreement for deed; and in assessing less than the full amount of attorney's fees and costs. Id.
The First District affirmed the trial court's rulings on the "fast track" foreclosure procedure and the attorney's fees and costs issues without discussion. Id. The district court also affirmed on the postjudgment interest rate issue after finding it merited "further discussion." Id. While noting that parties may, under section 55.03(1), Florida Statutes (1995), contractually set the rate of postjudgment interest, the court observed that "a contractual provision, as here, which sets only the rate of interest for the debt does not also govern the rate of postjudgment interest." Id. The district court then recognized that the general rule that a debt, after a final decree, bears interest at the statutory rate set for judgments and decrees "results from the application of the doctrine of merger by which the cause of action on the debt and damages recoverable on it merge into any judgment entered on the cause of action." Id.
Reasoning that the underlying cause of action and attendant recoverable damages have been transformed into a separate obligation, a judgment, the First District concluded that in order "to contractually set the rate of post-judgment interest the parties must expressly provide that the agreed interest rate also applies to any judgment or decree entered on the underlying debt." Id. at 1363. Since the parties' agreement only set the rate of interest for the underlying contractual debt, and not for any judgment resulting from a dispute thereof, the First District held that the 8% statutory rate applied to the postjudgment interest, as opposed to the 10% contractual rate. Id. However, in a footnote, the district court certified conflict with the Third District's decision in Gevertz, stating that "[t]o the extent that Gevertz ... holds that the contract rate of interest is applicable to both prejudgment and post-judgment interest rates, with respect, we believe that Gevertz is wrongly decided." Id. at 1363 n. 2.

LAW AND ANALYSIS
The issue presented requires application of the common law doctrine of merger and interpretation of section 55.03(1), Florida Statutes (1995). First, we begin our inquiry with a review of the conflict case.
In Gevertz, at issue was the following provision in a demand promissory note, which *681 was explicitly incorporated into Leonard and Sandra Gevertz's mortgage: "We promise to pay to the order of Morris and Anna Gevertz, his wife, Twenty Thousand and 00/100 Dollars... with interest thereon at the rate of 5½ per cent, per annum until fully paid." 608 So.2d at 130. The mortgage itself provided for a 10% interest rate for delinquent property taxes and unpaid insurance "until paid." Id. Leonard and Sandra divorced several years later with Sandra gaining sole title to the marital home.
Three years after the divorce, Anna, Sandra's former mother-in-law, filed a foreclosure action against Sandra. The trial court accepted Sandra's argument that the $20,000 was a gift and voided the mortgage and note. Id. On appeal, that ruling was reversed and the case was remanded for entry of a foreclosure judgment and determination of, among other issues, the applicable prejudgment and postjudgment interest rates on the loan. Id. After determining that the 10% interest rate provided for in the mortgage for delinquent taxes, etc., was intended as a general default interest rate, the trial court fixed both the prejudgment and postjudgment interest rates at 10% per annum.
On appeal, the Third District reasoned as follows to support its finding that the trial court erred in applying a 10% prejudgment and postjudgment interest rate on the remaining mortgage debt:
The note, which expressly incorporates the mortgage, is unambiguous as to the applicable prejudgment and postjudgment interest rates on the unpaid mortgage debt. The note and mortgage clearly provides that interest accrues "at the rate of 5½ per cent, per annum from date until fully paid." (emphasis supplied). See Annotation, Rate of Interest After Maturity on Contracts Fixing Rate "Until Payment", 6 A.L.R. 1196, 1197 (1920) ("the holding of the reported case (Agency of Canadian Can[Car] and Foundry Corp. v. American Can Co., [258 F. 363 (2d Cir. 1919)]) that `if the parties agree upon the rate of interest until the money is paid, or until the date of payment, that agreement is controlling and fixes the measure of damages upon default,' is supported by the great majority of the cases in the United States in which this question has arisen."); see also, 47 C.J.S. Interest & Usury § 40(a) (1982). Therefore, since there was no ambiguity as to the applicable prejudgment and postjudgment interest rates, the trial court's application of any interest rate other than 5 and one half percent (5½) constitutes a rewriting of that provision. The trial erred in rewriting an unambiguous provision.
Gevertz, 608 So.2d at 131 (emphasis added). Accordingly, the Third District reversed the trial court's ruling on that and other issues and remanded the case once more.
In contrast, the First District in Whitehurst analyzed the issue of the appropriate postjudgment interest rate as follows:
Although section 55.03(1) allows the parties to contractually set the rate of post-judgment interest, a contractual provision, as here, which sets only the rate of interest for the debt does not also govern the rate of post-judgment interest. To contractually set the interest rate applicable to a judgment or decree arising from a contract, the parties must expressly provide that the specified rate governs post-judgment interest.
Post-judgment interest did not exist at common law and is solely a matter of legislative creation. See, e.g., Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 840, 110 S.Ct. 1570, 1578, 108 L.Ed.2d 842 (1990)("At common law, judgments do not bear interest; interest rests solely upon statutory provisions."). Under section 55.03(1), Florida Statutes (1995), as of January 1st of each year, the comptroller of the State of Florida sets the rate of interest payable on judgments and decrees. Subsection 55.03(1) further provides that "[n]othing contained herein shall affect a rate of interest established by written contract or obligation."
The agreement for deed in the instant case provides that the Camps would pay the Whitehursts "Four Hundred Fifty Thousand and no/100 Dollars ($450,000.00)... with interest at the rate of 10 per centum (10%) per annum payable on the whole sum remaining from time to time *682 unpaid." The agreement for deed contains no provision, however, expressly governing the payment of interest on any judgment entered pursuant to the agreement.

As this court recognized in Ghanbari v. Perrault, 651 So.2d 1257, 1257-58 (Fla. 1st DCA 1995), as a general rule
... the debt bears interest at the contract rate to the date of the final decree. After the date of the decree, the total indebtedness, including principal and interest, attorneys fees, and expenses adjudged by the decree to have been incurred, bears interest at the statutory rate applicable to judgments and decrees generally.
(quoting, 37 Fla. Jur.2d, "Mortgages" § 333). This rule has long been a part of Florida law. See, American Securities Co. v. Goldsberry, 69 Fla. 104, 67 So. 862, 867 (1915). It results from the application of the doctrine of merger by which the cause of action on the debt and damages recoverable on it merge into any judgment entered on the cause of action. Jax Ice & Cold Storage Co. v. South Florida Farms Co., 91 Fla. 593, 609, 109 So. 212, 218 (1926); Gilpen v. Bower, 152 Fla. 733, 12 So.2d 884, 885 (1943)("[A] debt reduced to a judgment ... merges into the latter and loses its identity."). Thus, upon the entry of the judgment, the judgment does not bear interest as a debt or a cause of action, but as a judgment. As a result, on entry of the judgment the lender can no longer charge the contractual interest, but is entitled only to statutory interest. Sciandra v. First Union National Bank of Florida, 638 So.2d 1009, 1010 (Fla. 2d DCA 1994)(Altenbernd, J., concurring).
Although subsection 55.03(1) authorizes the parties to establish the post-judgment interest rate by contract, significantly the statute does not provide that the applicable contract interest rate also governs the post-judgment rate for judgments based on the contract. [n.1]
1. Compare, for example, the last sentence of subsection 55.03(1), Florida Statutes (1995), with subsection 15-1-4(1) of the Utah Code ("Any judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties....").
Thus, because a judgment is an obligation separate from the underlying contractual debt, to contractually set the rate of post-judgment interest the parties must expressly provide that the agreed interest rate also applies to any judgment or decree entered on the underlying debt. [n.2]
2. To the extent that Gevertz v. Gevertz, 608 So.2d 129 (Fla. 3d DCA 1992), holds that the contract rate of interest is applicable to both prejudgment and post-judgment interest rates, with respect, we believe that Gevertz is wrongly decided....
Since the terms of the instant agreement for deed set the rate of interest only for the indebtedness that is the subject of the cause of action, and not for any judgment resulting from the cause of action, the 8 percent statutory rate applies.
Whitehurst, 677 So.2d at 1362-63 (emphasis added).

MERGER DOCTRINE[1]
At the outset, we agree with the First District that the district court in Gevertz relied on questionable authority in finding that a contract which provided for interest "`at the rate of 5½ per cent, per annum from date until fully paid,'" was "unambiguous as to the applicable prejudgment and postjudgment interest rates on the unpaid mortgage debt." 608 So.2d at 131 (emphasis added). The case cited, Agency of Canadian Car & Foundry Co. v. American Can Co., 258 F. 363 (2d Cir.1919), does contain the *683 relied-on conclusion that "if the parties agree upon the rate of interest until the money is paid, or until date of payment, that agreement is controlling and fixes the measure of damages upon default." Id. at 373. However, the Second Circuit in Canadian Car then referenced the English case of Ex parte Fewings, 25 Ch. D. 338 (C.A.1883), which concerned an agreement to pay a 5% interest rate per annum until the debt was repaid. The claim was reduced to judgment which, under English law, carried a 4% interest rate. Id. at 349. The bankruptcy judge held that since the parties had expressly agreed to a 5% interest rate until paid, the creditor was entitled to that rate even after judgment and until paid.
That decision was reversed by England's Court of Appeal which held that the 5% interest rate should be paid so long as the contract for payment remained in force, "but that the contract came to an end when judgment was entered and the liability under it was gone, being merged in the judgment, so that it could not therefore be said that there was an agreement to pay 5 per cent." 258 F. at 374 (emphasis added). Accordingly, based on Ex parte Fewings, the Second Circuit concluded that the 2% contract interest rate in Canadian Car only continued until the decree was entered. Id.
The Seventh Circuit reached a similar conclusion in its assessment of Canadian Car, which had been cited as authority in a case about applicable interest rates in a bankruptcy settlement. In re Van Camp Products Co., 107 F.2d 568 (7th Cir.1939), cert. denied, 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1028 (1940). The Seventh Circuit observed that:
All we can get from [Canadian Car] is that the court held the parties to their contract prior to the entry of the decree, and that the contract being merged in the decree, bore the allowable rate of interest thereafter. The principle announced in this and similar cases may be illustrated thus: A owes B $1000 on a promissory note without interest, due one year after date. At the end of the year A reduces the note to judgment. It seems plain, under the authorities, that the note having become merged in the judgment, the latter would bear the allowable interest rate.
Id. at 572 (emphasis added).
Therefore, from this perspective of Canadian Car, we find that Gevertz is predicated on the faulty premise that an express contractual provision governing the interest rate on an unpaid debt survives the entry of a judgment without specifically accounting for the rate of postjudgment interest. In the final analysis, Canadian Car actually supports the rationale and result in Whitehurst, while undermining the reasoning and decision in Gevertz on the conflict issue. See also American Securities Co. v. Goldsberry, 69 Fla. 104, 122, 67 So. 862, 867 (1915) (stating that mortgage principal "should bear interest at the contract rate to the date of the final decree, after which the total indebtedness... adjudged by the decree to have been incurred, bears interest at the rate prescribed by the statute").
To further illustrate the point, we find instructive the analogous application of the doctrine of merger to real estate transactions. In that context, merger means that "all preliminary agreements and understandings leading up to the sale of real estate merge in the deed." Southpointe Development, Inc. v. Cruikshank, 484 So.2d 1361, 1362 (Fla. 2d DCA 1986). Put another way,
property transactions are inherently a "two-act" play in which the two acts are separated by a lengthy "intermission;" that the parties may during the intermission actually or impliedly change their initial agreement ("Act I"); and that whether or not they did in fact evoke a change, the second act (the closing) is deemed to carry out and fulfill the first act (the contract), so that the first act has been "swallowed up" and is of no further legal effect.

Edwin M. Ginsburg, The Doctrine of Merger With Respect to Real Estate Transactions: Taking the Bull by the Horns, 16 Nova L.Rev. 1171, 1176 (1992) (footnotes omitted) (emphasis added). See also Volunteer Security Co. v. Dowl, 159 Fla. 767, 768, 33 So.2d 150, 151 (1947) (finding no restrictive covenant in deed where restrictive covenant in contract for deed merged in the deed). Therefore, as with the separate and discrete *684 component parts of real estate transactions, an installment interest rate on an unpaid debt such as a mortgage or agreement for deed and the reduction of that debt to a judgment through a foreclosure action maintain unique and distinct legal existences. In other words, unless expressly applied to prospective judgments in the terms of the underlying contract itself, the contractual interest rate extinguishes[2] when the cause of action based on that contract takes on new legal form as a judgment. Cf. Rubell v. Finkelstein, 679 So.2d 889, 889-90 (Fla. 3d DCA 1996) (recognizing general rule that acceptance of deed in real estate transaction merges or extinguishes agreements in underlying contract but finding merger doctrine inapplicable since contract expressly provided that seller's warranties "shall survive closing").

STATUTORY INTERPRETATION
Finally, the Whitehursts contend that since section 55.03 unambiguously provides that "[n]othing contained herein shall affect a rate of interest established by written contract or obligation," and their contractual rate of 10% per annum was similarly unambiguous, both the trial court and the First District erred in not allowing the parties' contractual rate to apply postjudgment. Amicus curiae Roger's Cushions, Inc., similarly argues that since the Camps "expressly agreed to pay `interest... on the whole sum remaining from time to time unpaid ...,' the First District's strained construction of section 55.03 essentially rewrote the parties' contract to relieve the debtors of their contractual obligation to pay an agreed rate of interest on the unpaid balance as a result of their own defaults." We find no merit in these arguments.
Section 55.03, Florida Statutes (1995), addresses judgments and the applicable rates of interest. Subsection (1) provides that:
On December 1 of each year beginning December 1, 1994, the Comptroller of the State of Florida shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate.
The final sentence in subsection (1) contains the cited language that "[n]othing contained herein shall affect a rate of interest established by written contract or obligation." As the First District recognized, while that passage authorizes "parties to establish the post-judgment interest rate by contract, significantly the statute does not provide that the applicable contract interest rate also governs the post-judgment rate for judgments based on the contact." Whitehurst, 677 So.2d at 1363. Thus, there is no dispute that the parties could have set a postjudgment interest rate in their contract or provided that the postjudgment rate would be the same as the contract rate. However, neither the Whitehursts nor the amicus acknowledge that the Whitehursts' "unambiguous" contract indisputably did not contain such a provision. Since section 55.03 concerns judgment interest rates solely, and the parties' agreement only set a contract interest rate, the First District correctly gave the statute its plain and obvious meaning and, consequently, rejected the Whitehursts' argument that their contract interest rate should also govern the postjudgment interest rate. See Holly v. Auld, 450 So.2d 217 (Fla.1984). We approve the First District's decision and adopt its analysis.
Accordingly, we approve Whitehurst and disapprove Gevertz to the extent it is inconsistent with this opinion. We decline to address the other issues raised by the Whitehursts.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] In a variation on the issue presently before us, we recently applied the merger rule to prejudgment and postjudgment interest on attorney fee awards. See Quality Engineered Installation, Inc. v. Higley South, Inc., 670 So.2d 929 (Fla.1996). After concurring with a line of cases from the Fifth District that "approve including prejudgment amounts in a merged total, with postjudgment interest then accruing on the merged total," we concluded that "prejudgment interest becomes part of a single total sum ... [and] like all other components of the `judgment,' automatically bears interest as provided by section 55.03, Florida Statutes (1993)." Id. at 931.
[2] Of course, the same can be said regarding the cause of action itself. See Restatement (Second) of Judgments § 18 (1982). As noted in comment a, after a plaintiff recovers a valid and final personal judgment, the original claim is extinguished and merges in the judgment and "rights upon the judgment are substituted for it."