SALTER, J.
 

 Nack Holdings, LLC, appeals four circuit court orders collectively determining the enforceability of an amended final judgment of foreclosure entered in August 2003. In a complex series of loan and real estate transactions worthy of analysis by Professor Boyer
 
 [1]
 
 or inclusion in a law
 
 *94
 
 school final exam, we conclude that the appellee and its predecessors in interest attempted to circumvent a controlling Florida statute. As a matter of law, therefore, we must reverse the orders below and remand the matter back to the trial court for the entry of a recordable final judgment declaring the amended judgment satisfied as of September 24, 2003, when it was paid.
 

 Keeping It Simple
 
 — Not
 

 The underlying case began simply enough. Two individuals loaned money to ZPO, Inc., secured by two vacant commercial lots located along Collins Avenue in Miami Beach (the “Collins Lots”). When ZPO failed to repay the mortgage loan, the lenders foreclosed. They obtained a final judgment of foreclosure for $454,572.68 on October 25, 2002.
 

 Before the property went to a foreclosure sale, however, the unsatisfied final judgment of foreclosure against ZPO was assigned to Florida Capital, LLC, and then re-entered as an amended final judgment of foreclosure reflecting Florida Capital as the plaintiff and ZPO as the mortgagor/defendant. That amended final judgment was then assigned to United Funding, LLC, in August of 2003.
 

 To recap as of the end of August 2003, then, there was no mortgage on the Collins Lots, that mortgage having “merged”
 
 [2]
 
 into the amended final judgment of foreclosure then held by United Funding. ZPO owned the Collins Lots, but subject to United Funding’s judgment lien. The amended final judgment, which was by then no longer subject to appeal, established a judgment debt of $531,305.92 as of June 24, 2003, with daily interest thereafter in the amount of $249.04.
 
 [3]
 

 At this point in the record, an organizational diagram would have been more helpful than a narrative. Judgment debtor ZPO was wholly owned by an individual (real estate developer Mucio Athayde) who also owned all of the stock of New Florida Holdings, Inc. (NFH), which in turn owned all of the stock of New Florida Properties, Inc. (NFP). NFP was in a Chapter 11 reorganization proceeding begun in 2002 in the U.S. Bankruptcy Court for the Southern District of Florida. In September 2003, United Funding (judgment creditor of ZPO and judgment lienholder as to the Collins Lots) loaned $2,600,000 to NFH in order to facilitate the NFP plan of reorganization and restructure other indebtedness. These seemingly-extraneous facts became relevant because of the written loan agreement among these parties.
 

 Paragraph 5 of the loan agreement of September 24, 2003 addressed the use of certain proceeds of United Funding’s loan to satisfy the ZPO indebtedness to United Funding:
 

 5. [NFH] and [Athayde] represent that from the $2,600,000 proceeds they will satisfy the existing ZPO, Inc. loan from FL Capital, LLC, which was assigned to United Funding LLC, however, the existing mortgage on said property, assigned to United Funding, LLC shall
 
 *95
 
 not be satisfied of record until [United Funding’s] loans have been paid in full as the ZPO, Inc., property is serving as additional collateral for said loans.
 

 This single, meandering sentence spawned the trial and appellate proceedings that have brought us here. The appellant (also acquiring its rights through various assignments), Nack Holdings, became the fee owner of the Collins Lots in 2004 and, after investigation, began to question whether the United Funding judgment lien remained in force or had been satisfied. The appellee (assignee in 2007 of United Funding’s amended judgment of foreclosure on the Collins Lots) argues that Nack Holdings is a stranger to the 2003 loan terms, and that the parties to that loan agreement are the only witnesses with the right to prove the less-than-obvious intentions behind this provision. The trial court agreed with this rational argument, and we would ordinarily affirm because of the competent, substantial evidence in the record regarding those intentions. But there are some competing legal principles that mandate a reversal here.
 

 Section
 
 701.0k,
 
 Florida Statutes
 

 Paragraph 5 of the loan agreement specifically acknowledged that the United Funding “loan” to ZPO would be “satisfied” from the $2,600,000 in proceeds, but went further to provide that the “existing mortgage” would not be “satisfied of record” unless and until United Funding was repaid in full on both the new loan and another loan made to NFP. For purposes of this analysis, we agree with the trial court’s determination (and the appellee’s contention) that United Funding has not yet received full payment on those loans.
 
 [4]
 
 We construe references to the United Funding-ZPO “loan” and “existing mortgage” to be references to the amended final judgment of foreclosure because (as already noted) the note and mortgage merged into that amended judgment.
 

 The closing statement for the $2,600,000 United Funding-NFH loan, also dated September 24, 2003, shows a $550,219.16 “charge” to the loan for “payment on ZPO, Inc. loan.” The settlement agent for the transaction acknowledged under oath that this amount was paid. The settlement agent also testified that the United Funding loan to NFH was “secured by the amended final judgment on the Collins lots” and other collateral.
 

 While this seems to express an intention that the amended final judgment (with its lien over ZPO’s Collins Lots) was to collateralize the 2003 United Funding-NFH loan, this cannot be reconciled with two undisputed facts. First, United Funding
 
 owned
 
 the amended judgment said to stand as security for the loan made by United Funding. A lender does not pledge its own property to secure a loan made by that very lender. The appellee concedes that no new person or entity became the holder of the amended final judgment, and no instrument of transfer or pledge was executed.
 

 Second, the proceeds of the new loan were either disbursed or credited to “pay” or “satisfy” the amended final judgment, in the language of the loan agreement and closing statement — the plan apparently was that the amended final judgment sim
 
 *96
 
 ply would not be satisfied “of record.” But any such plan contravenes a controlling Florida law. Section 701.04(1), Florida Statutes (2003), specifies that:
 

 Whenever the amount of money due on any mortgage, lien, or judgment shall be fully paid to the person or party entitled to the payment thereof, the mortgagee, creditor, or assignee, or the attorney of record in the case of a judgment, to whom such payment shall have been made, shall execute in writing an instrument acknowledging satisfaction of said mortgage, lien, or judgment and have the same acknowledged, or proven, and duly entered of record in the book provided by law for such purposes in the proper county.
 

 (Emphasis added).
 

 That provision does not have an exception for a judgment creditor who receives full payment of a judgment but wants to defer recordation of the satisfaction of judgment until a new loan is repaid at some indeterminate future time. It also imposes a mandatory duty that would seem to be for the benefit of all those having an interest in a piece of property,
 
 [5]
 
 assuring that the real estate records will reflect outstanding debts rather than obligations already paid.
 

 Finally, the attempt to use a judgment lien that has been paid as a device to secure a new loan is conceptually flawed. A mortgage used to secure a revolving line of credit contains special language confirming that it will secure advances, readvances after a partial payment or reduction of the balance to zero, and so forth until the agreement is terminated. A mortgage used to secure future advances will contain an express “future advances” provision consistent with section 697.04, Florida Statutes (2008), and will thereby confer on those advances the same date of record priority as the original mortgage.
 

 In contrast, a foreclosure judgment is a judicial document ending the lender-borrower relationship and imposing the even less cordial status of judgment creditor and judgment debtor upon the parties. A court does not ordinarily authorize the parties to use the court’s judgment as a device to secure post-judgment loans.
 
 [6]
 
 As creative and flexible as we may wish to allow contracting private parties to be in their agreements, those parties do not have the right to use judgments as another form of mortgage; only the court that issued a judgment may approve what sums are included in, and enforceable under, such an instrument. In this case, no court authorized the inclusion of United Funding’s new advances to NFH as a judgment debt.
 

 The parties have raised additional arguments. Although we have carefully considered each of them, all are either moot in light of our application of the controlling statute or otherwise unpersuasive.
 

 Conclusion
 

 The concept of both paying and “not satisfying of record” a judgment lien is a kind of legal cognitive dissonance that can
 
 *97
 
 not be resolved. The intention to contravene a controlling Florida statute, section 701.04(1), will not be given effect. The amended final judgment, having been paid, did not “collateralize” the post-judgment United Funding loan. Accordingly, we reverse and remand the case to the trial court to: (a) vacate the order re-setting foreclosure sale and the order denying the appellant’s motion for relief from judgment; and, (b) to grant the appellant’s motion for relief, determining that the amended final judgment dated August 5, 2003, and recorded August 11, 2003, was paid on September 24, 2003, and is therefore cancelled and satisfied of record.
 

 Reversed and remanded.
 

 [1]
 

 . The late Professor of Law Emeritus at the University of Miami School of Law, Ralph E.
 
 *94
 
 Boyer, B.A., LL.B., S.J.D., longtime author and editor of
 
 Florida Real Estate Transactions
 
 (Matthew Bender 1975).
 

 [2]
 

 . This occurs as a matter of well-settled Florida law. The mortgage is merged into the judgment, is thereby extinguished, and “loses its identity.”
 
 Whitehurst v. Camp,
 
 699 So.2d 679, 682 (Fla.1997) (quoting
 
 Gilpen v. Bower,
 
 152 Fla. 733, 12 So.2d 884, 885 (1943)).
 

 [3]
 

 . This apparently represents an agreed or pri- or express contractual interest rate based on the original loan terms, as the then-applicable post-judgment statutory interest on the judgment debt would have been approximately $87.33 per day.
 

 [4]
 

 . The appellant argues that in-kind transfers of certain properties to United Funding as part of a 2007 bankruptcy settlement (and the accompanying releases) amounted to the “payment” of the $2,600,000 United Funding loan and all accrued interest. We need not reach the arguments regarding valuation of those properties in light of our conclusion that the amended final judgment of foreclosure on the Collins Lots was paid in full on September 24, 2003.
 

 [5]
 

 . Consistent with the conclusion that the statute imposes a duty to the public at large rather than just to an affected judgment debt- or, section 701.05 provides that a creditor’s failure to record such a satisfaction, after payment and the passage of thirty days from a written demand, is a second degree misdemeanor.
 

 [6]
 

 . Foreclosure judgments occasionally include a provision allowing additional amounts to be added to the lien for authorized disbursements by a lender as "costs" of preservation of the subject property between judgment and sale, but those are not the kinds of additional advances involved in this case.