SALTER, J.
 

 One 79th Street Estates, Inc., Po Boy Realty Investments, Inc., and their president, Mr. Wilson, appeal a final summary judgment of foreclosure on a commercial mortgage loan for $759,600, documented in June 2006. Because the appellee/lender, American Investment Services (AIS), accepted a very substantial paydown after an initial payment default and acceleration, and because of the conflicting terms of documents offering reinstatement of the mortgage
 
 after
 
 the entry of an earlier judgment, we reverse the final summary judgment and remand the case for further proceedings.
 

 No Stamps, No Foreclosure
 

 This was a commercial loan on stationery-store documents that were modified as additional advances occurred. There is nothing inherently wrong with pre-printed notes and mortgages, but in this case the forms omitted certain terms that might have guided the parties and the court after an unusual series of occurrences and problems. Less is not always more.
 

 The first problem was a payment default by the appellants; this gave rise to a foreclosure complaint in 2006. The second problem was AIS’s failure to pay for documentary stamp and intangible taxes on the mortgage, and to record it. Notwithstanding the fatal deficiency inherent in AIS’s failure to pay the required taxes,
 
 [1]
 
 and
 
 *888
 
 apparently as a result of the appellants’ failure to mount any meaningful defense, a predecessor trial judge entered a final summary judgment of foreclosure in January 2007. A foreclosure sale was then set for April 5, 2007.
 

 At some point before that sale, the parties entered into a reinstatement and mortgage modification agreement. The April 2007 “Agreement for Reinstatement of Mortgage and to Secure Additional Advances” included (among other terms) a recitation of the loan history, an itemized reinstatement amount of $100,503 (acknowledging receipt of $34,100 paid by the appellants to reduce that arrearage to $66,403), and a postponement of the foreclosure sale for 75 days so that the appellants could pay that balance. Paragraph 6 of the agreement stipulated that “the mortgage note and mortgage are a good and valid mortgage on the subject property and that [the appellants] have no defenses thereto.” In June 2007, it is undisputed that the appellants made a further payment of $82,000 to AIS, bringing the total post-judgment payments to $116,100.
 
 [2]
 

 No Reinstatement, No Refund, No Judgment
 

 AIS later maintained that the payments of $116,100 were insufficient to reinstate the mortgage, but were tendered and accepted only in consideration of AIS’s agreement to reschedule foreclosure sale dates. Ultimately, AIS did not reinstate the mortgage, dismiss the foreclosure, or return any of the payments made by the appellants. In December 2007, just before a rescheduled sale, Mr. Wilson filed a petition under Chapter 13 of the United States Bankruptcy Code and the sale was can-celled. During the bankruptcy, Mr. Wilson raised the lender’s non-payment of taxes and resulting unenforceability of the mortgage. The bankruptcy court sent the parties back to the circuit court for a resolution of that issue. In June 2008, the trial court
 
 vacated
 
 the foreclosure judgment and abated the foreclosure lawsuit to permit AIS to pay the documentary stamp and intangible taxes and record the mortgage. AIS then took those steps.
 

 Resumption of the Foreclosure Action
 

 In November 2008, the bankruptcy court dismissed Mr. Wilson’s Chapter 13 case. In 2009, AIS resumed its prosecution of the original 2006 foreclosure case and moved again for final summary judgment. The appellants were allowed to amend their affirmative defenses before AIS’s motion was heard.
 

 Although the appellants raised a number of affirmative defenses and related issues in Mr. Wilson’s affidavit,
 
 [3]
 
 only one issue
 
 *889
 
 merits consideration here. The appellants’ second and third amended affirmative defenses asserted that the mortgage was to have been reinstated upon AIS’s receipt of the $116,100 in payments in April and June of 2007. After a hearing, these amended affirmative defenses were rejected. AIS’s motion was granted, the final summary judgment was entered, and this appeal followed.
 

 Analysis
 

 When a mortgage is foreclosed, the mortgage is “merged” into the final judgment and loses its separate identity.
 
 Nack Holdings, LLC v. Kalb,
 
 13 So.3d 92, 94 n. 2 (Fla. 3d DCA 2009). The “reinstatement” of a mortgage after the entry of a foreclosure judgment is considerably more significant than merely rescheduling a foreclosure sale date. Reinstatement signifies that the mortgage is returned to its pre-default status as an effective instrument, by definition anticipating that any foreclosure judgment is vacated and the lawsuit dismissed.
 
 [4]
 
 There is no apparent reason the parties could not have agreed to some form of settlement agreement whereby the foreclosure judgment would be reduced by the amounts paid, the lawsuit would not be dismissed, and a sale would only be set if the judgment debtor defaulted on future obligations, but that is not the agreement memorialized in this case.
 

 Rather, the April 2007 reinstatement agreement expressly refers to an opportunity for the mortgagor to “reinstate” the AIS mortgage, to a “cure” of past amounts due, to the addition of the liquor license foreclosure amount “to the amount due under [AIS’s] note and mortgage,” and to a stipulation that “the mortgage note and mortgage are a good and valid mortgage on the subject property.” Each of these terms indicates a withdrawal of acceleration and a return of the mortgage loan to its pre-default, pre-foreclosure status. Coupled with the appellants’ undisputed payment of amounts exceeding the specified “arrearage,”
 
 and AIS’s retention of those payments,
 

 [5]
 

 AIS is not entitled to judgment as a matter of law.
 

 Another incongruity in the pleadings, affidavits, and judgment is evident in the interest amounts computed by AIS and included in the summary final judgment. Simple arithmetic discloses that AIS used the default interest rate of 18% per annum versus the “good standing” rate of 16%. If, as the appellants plainly intended, the $116,100 was tendered for “reinstatement,” the lower rate would have applied unless and until further (post-reinstatement) defaults arose and were noticed, and until the reinstated loan was again accelerated as a result of any such defaults.
 

 Conclusion
 

 Reviewing this record and all inferences in favor of the appellants as required,
 
 [6]
 
 we conclude that a triable issue exists regarding the June 2007 reinstatement agree
 
 *890
 
 ment and the parties’ performance under it. Because the final summary judgment was denied as to any personal liability of Mr. Wilson under the mortgage loan, we have not addressed the parties’ contentions on that point.
 

 The final summary judgment is reversed and the case is remanded for further proceedings.
 
 [7]
 

 [1]
 

 . Section 201.08(l)(b), Florida Statutes (2007), precludes judicial enforcement of a mortgage "unless and until the tax due thereon ... has been paid.” The note and mortgage attached to AIS’s 2006 complaint were copies of the unrecorded documents, and
 
 *888
 
 there is no indication that the original note and mortgage were filed or presented to the trial court when the first (void) final judgment of foreclosure was entered in 2007.
 

 [2]
 

 . The reinstatement agreement also provided that $50,619 advanced by AIS or an affiliate to prevent foreclosure of the appellants’ liquor license would be added to the mortgage principal and repaid in the (increased) monthly installments. The lender's willingness to tolerate default, make a further advance, and reinstate the mortgage is explained by the 16% per annum "good standing” interest rate and 18% default rate agreed upon in the documents.
 

 [3]
 

 . Mr. Wilson’s affidavit of September 15, 2009 substantiates the reinstatement payments, but it was not docketed before the summary judgment hearing. Mr. Wilson maintains that he filed it well in advance of the hearing, but it does not bear a certificate of service confirming timely mailing to the appellants' counsel. We do not address whether it was indeed filed as required, because AIS does not dispute the receipt or timing of the payments. June 2009 affidavits of other witnesses (and indisputably a part of the record) authenticated the 2007 reinstatement agreement and the payments to AIS made by Mr. Wilson.
 

 [4]
 

 . Ordinarily reinstatement occurs when the mortgagor tenders arrearages before acceleration. This "results in a reinstatement of the mortgage loan to a current status_" Kendall Coffey,
 
 Foreclosures in Florida
 
 265 (2d ed. 2008). A reinstatement of a mortgage after acceleration and foreclosure can accomplish the intended result only if the foreclosure judgment is vacated.
 

 [5]
 

 . In AIS’s affidavits in support of its motion for summary judgment, AIS attached a letter from AIS’s counsel in June 2007 purporting to add additional terms for reinstatement. If there was not a meeting of the minds, however, and the appellants were not entitled to reinstatement, AIS had no right to retain the payments tendered pursuant to the agreement.
 

 [6]
 

 . Sheikh v. Coregis Ins. Co.,
 
 943 So.2d 242, 244 (Fla. 3d DCA 2006).
 

 [7]
 

 . Such further proceedings should also address the appellants' requests for additional discovery and leave to amend to add a counterclaim. Those motions were denied in connection with the summary judgment rulings.