CORTINAS, J.
JPMorgan Chase Bank, N.A., as successor in interest to Washington Mutual Bank (“Washington Mutual”),[1] appeals the trial *510 court’s order (the “April 2010 Order”) vacating the final judgment entered against Marianne Hernandez and Carlos Hernandez (collectively the “Debtors”), discharging Washington Mutual’s lis pendens, and dismissing Washington Mutual’s lawsuit with prejudice. Finding no basis whatsoever for the entry of the April 2010 Order, we reverse. We further grant Washington Mutual’s motion for appellate attorneys’ fees and sanctions against the Debtors and their counsel for abusing the legal process, resulting in a drain of judicial resources and unnecessary litigation expenses. See Gables Club Marina, LLC v. Gables Condo. & Club Ass’n, 948 So.2d 21, 25 n. 2 (Fla. 3d DCA 2006).
In 2005, Marianne Hernandez executed and delivered a promissory note to Washington Mutual (the “Promissory Note”). The Promissory Note was secured by a mortgage executed on the same day by the Debtors (the “Mortgage”). On April 28, 2008, Washington Mutual filed a complaint to reestablish the Promissory Note, which it alleged had been lost, and to foreclose the Mortgage. On May 8, 2008, Mrs. Hernandez filed with the court a “Demand for Validation of Debt/Claim,” but did not answer the complaint or raise affirmative defenses. In May 2009, the trial court granted final summary judgment in favor of Washington Mutual, entered a final judgment of mortgage foreclosure, and scheduled the foreclosure sale for October 7, 2009.[2] In the interim, on September 9, 2009, the Debtors inexplicably recorded a new, unilateral promissory note which, by its terms, purported to change Washington Mutual into a borrower and the Debtors into lenders (the “Unilateral Note”). On December 15, 2009, the trial court, upon Washington Mutual’s motion, rescheduled the foreclosure sale for February 23, 2010.
The events that followed the rescheduling of the foreclosure sale are just as mind-boggling as the creation, recording, and filing of the Unilateral Note. On February 19, 2010, the Debtors filed a Notice of Intent to File Discharge dated September 9, 2009 which, on its face, stated that it was filed contemporaneously with the recording of the Unilateral Note. Surprisingly, despite being dated September 9, 2009, and having a court file stamp of February 19, 2010, the document bears a notary’s certification that “the foregoing instrument was sworn to/acknowledged before [the notary] this 22 day of February 2010 ...,” approximately three days after the document was filed in the court record. In addition, the Debtors also filed a Notice of Discharge on February 19, 2010, with the same discrepancy, certifying that it was notarized three days after the document itself was filed with the court. Based upon these documents, the Debtors filed an emergency motion to cancel the pending sale.[3] Following what seems to have been an ex parte hearing on February 23, 2010, the trial court entered a handwritten order which reset the sale date to May 24, 2010, and included the statement that “[t]he next hearing on this matter is scheduled for April 14, 2010 at 9:30 am.” The intended subject of the April 14, 2010 hearing remains unclear and *511 the record reflects that there were no pending motions at the time the hearing was set.[4]
On April 13, 2010, one day prior to the hearing, the Debtors filed a verified motion to vacate the final judgment, cancel the May 24, 2010 foreclosure sale, discharge the lis pendens, and dismiss the case with prejudice (“Motion to Vacate”). The Motion to Vacate did not have a certificate of service. The Debtors, in the appendix to the answer brief, include a separate notice of filing the Motion to Vacate with the notice’s certificate of service bearing the date April 7, 2010. The notice of filing was signed by the Debtors’ counsel, but provided no indication whatsoever that the Motion to Vacate was to be argued at the April 14, 2010 hearing. Additionally, this notice of filing does not appear in the trial court record.[5] Not surprisingly, Washington Mutual asserts that it was not present at the April 14, 2010 hearing because it had not been served with either notice of the hearing or the Motion to Vacate.[6]
During the April 14, 2010 hearing, Debtors and their counsel, Attorney Paul B. Woods, managed to convince the trial court that a mere letter of “tender” and a fabricated Unilateral Note, without payment of any kind, were sufficient to discharge the entire debt owed to Washington Mutual. Judge Adrien, in turn, granted the Motion to Vacate, vacated the final judgment, discharged the lis pen-dens, and dismissed Washington Mutual’s complaint with prejudice.[7] Washington Mutual now argues that the trial court erred in so doing. We agree and reverse.
The Promissory Note and the Mortgage merged into the final judgment upon its entry. “This occurs as a matter of well-settled Florida law. The mortgage is merged into the judgment, is thereby extinguished, and ‘loses its identity.’ ” Nack Holdings, LLC v. Kalb, 13 So.3d 92, 94 n. 2 (Fla. 3d DCA 2009) (quoting Whitehurst v. Camp, 699 So.2d 679, 682 (Fla.1997)); Gilpen v. Bower, 152 Fla. 733, 12 So.2d 884, 885 (1943) (“Although the debt secured by a mortgage exists independently of the instrumente,] a debt reduced to a judgment does not have this peculiarity as the former merges in the latter and loses its identity.”); Diamond R. Fertilizer Co., Inc. v. Lake Packing P’ship, 743 So.2d 547, 548 (Fla. 5th DCA 1999) (“[A] cause of action upon which an adjudication is predi *512 cated merges into the judgment and ... consequently, the cause of action’s independent existence perishes upon entry of the judgment.”); Vernon v. Serv. Trucking, Inc., 565 So.2d 905, 906 (Fla. 5th DCA 1990) (“[A] debt reduced to final judgment merges into the final judgment and loses its prejudgment identity.”).
Florida Rule of Civil Procedure 1.540 provides, in pertinent part, that a court may relieve a party from a final judgment where “the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application.” Fla. R. Civ. P. 1.540(b)(5) (emphasis added). The Debtors assert that the trial court properly vacated the final judgment, because “the judgment had been satisfied in accordance with Florida Rule of Civil procedure 1.540.” They also argue that, as referenced in the Motion to Vacate, the Unilateral Note was mailed to Washington Mutual’s Chief Financial Officer[8] and, as such, constituted a tender of a “negotiated and agreed upon promissory note in full and final satisfaction of any amount due Plaintiff pursuant to the original [Pjromissory [Njote secured by the [Mjortgage.” (emphasis added). This argument is flawed for numerous reasons. To begin with, the Debtors’ assertions that they were “entitled to the discharge of the [Promissory] [N]ote and the Mortgage” by virtue of a concocted Unilateral Note executed after the entry of the final judgment wholly disregards the well-established principle that the Promissory Note and Mortgage were merged into the final judgment and ceased to exist independently. See Gilpen, 12 So.2d at 885; Nack, 13 So.3d at 94 n. 2; Diamond R. Fertilizer Co., 743 So.2d at 548; Whitehurst, 699 So.2d at 682.
Furthermore, the Unilateral Note tendered by the Debtors to Washington Mutual is problematic on its face. The Unilateral Note identifies Marianne Hernandez and Carlos Hernandez as the “Primary Lenders” and states:
In addition to Promissory Note related to Mortgage # 03-2324-068833175-0 signed by the Primary Lender and deposited with Washington Mutual Bank, FA on January 1, 2005 Primary Lender hereby grants to Washington Mutual Bank, FA use and benefit of this Promissory Note # 70060100000620194303 for U.S. $344,163.30 (this amount is called “principal”), to the order of the Primary Borrower. The Primary Borrower is Washington Mutual Bank, FA[.]
[[Image here]]
3. PAYMENTS
(A) Time and Place of Payments
(B) Primary Borrower shall not pay any interest for use of principal as any portion of annual repayments
(C) Amount of Primary Borrower’s Initial Repayments Each Primary Borrower repayment will be in the amount of U.S. $-0-, or one thirtieth of the principal amount once the payment period had been established.
(emphasis added.) Despite the nonsensical terms of the Unilateral Note, the Debtors amazingly claim that they are satisfying “any amount due Plaintiff pursuant to original promissory note” by tendering this newly concocted document, and therefore, owe nothing to Washington Mutual. *513 The absurdity of this argument notwithstanding, there is absolutely no evidence in the record that Washington Mutual “negotiated and agreed [to]” the Unilateral Note, nor is there any evidence that Washington Mutual ever considered a possible pre-judgment modification of the Mortgage or renegotiation of the Promissory Note. Moreover, other than the Debtors’ self-serving, unsupported statements, the record is devoid of any evidence demonstrating that the final judgment, much less the Promissory Note or the Mortgage, were ever satisfied. Given the sheer lack of evidence that there had been a satisfaction of any kind by the Debtors, the requirements of Florida Rule of Civil Procedure 1.540(b)(5) were simply not met, and, thus, there was no basis for vacating the final judgment. Accordingly, we reverse the trial court’s April 2010 Order and remand with instructions to reinstate Washington Mutual’s lawsuit, lis pendens, and the final judgment. The trial court is further instructed to reschedule the foreclosure sale.
We also consider and grant Washington Mutual’s motion for appellate attorneys’ fees and sanctions. Under Florida law, “appellate attorney’s fees may be assessed against a party and their counsel for filing a frivolous appeal pursuant to section 57.105, Florida Statutes ... and Florida Rule of Appellate Procedure 9.410.” Visoly v. Sec. Pac. Credit Corp., 768 So.2d 482, 490 (Fla. 3d DCA 2000); see T.I.E. Commc’ns, Inc. v. Toyota Motors Ctr., Inc., 391 So.2d 697 (Fla. 3d DCA 1980). Further, “[f]ees are appropriate under section 57.105(1) when the party or his attorney pursues a claim or defense that is without factual or legal merit.” Sullivan v. Sullivan, 54 So.3d 520, 522 (Fla. 4th DCA 2010) (emphasis added). This Court has previously defined an appeal as “frivolous if it presents no justicia-ble question and is so devoid of merit on the face of the record that there is little prospect it will ever succeed.” Visoly, 768 So.2d at 490-91. Acknowledging that, to a certain extent, the term “frivolous” is incapable of “precise determination,” we have examined “established guidelines for determining when an action is frivolous.” Id. at 491. These include instances where cases are found:
(a) to be completely without merit in law and cannot be supported by a reasonable argument for an extension, modification, or reversal of existing law; (b) to be contradicted by overwhelming evidence; (c) as having been undertaken primarily to delay or prolong the resolution of litigation, or to harass or maliciously injure another; or [ (d) ] as asserting material factual statements that are false.
Id. (emphasis added). This case falls squarely within these guidelines. While the majority of appeals presented in this Court are worthy of review,
we would be remiss in our duties as judges if we failed to underscore our lack of tolerance for that small percentage of cases which drain judicial resources and result in unnecessary litigation expenses. The procedural history of this case reflects an abuse of legal processes which demands a more detailed review, and clear message that frivolous appeals will be sanctioned.
Id. at 485. Accordingly, we grant Washington Mutual’s motion for appellate attorneys’ fees and sanctions against both the Debtors and their attorney, Paul B. Woods, jointly and severally. See id.; § 57.105 Fla. Stat. Also, given the essentially fraudulent behavior of the Debtors, and the potentially unethical conduct of their counsel, based upon and in furtherance of this behavior, we refer Paul B. Woods to the Florida Bar for its determi *514 nation of whether professional discipline is warranted.
Reversed and remanded with instructions.

. Washington Mutual was the plaintiff in the lawsuit against Marianne Hernandez and Carlos Hernandez. Washington Mutual has since been acquired by JPMorgan Chase Bank, N.A., and thus, has been substituted as the real party in interest in this appeal. How *510 ever, for ease of reference, and given the language of several documents quoted herein, the appellant in this opinion is referred to as Washington Mutual.

. Washington Mutual cancelled the October 7, 2009 sale in order to afford the Debtors the opportunity to resolve the matter without the need for a judicial sale.

. The purported ex parte motion is not in the record. There is an entry of "Text” and “DEMAND, MOTION & ORDERR [sic] CANCELLATION OF FORECLOSURE," in the trial court docket, but neither party has provided an actual copy of the motion. Washington Mutual asserts that it was never served a copy of this motion.

.In their answer brief, the Debtors admit that at the February 23, 2010 hearing,
WASHINGTON [Mutual] ... was advised of HERNANDEZ’ [sic] motions to be filed through undersigned counsel (and not prose), which would be heard as court ordered on April 14, 2010 at 9:30 A.M. Please note that there were no other motions or issues pending before the court or filed in the lower court docket other than HERNANDEZ’S motions to Vacate the Final Judgment, Discharge the Lis Pendens and Dismiss the Case With Prejudice.
(emphasis added). By the Debtors’ own admission, the motion(s) purportedly to be argued at the April 14, 2010 hearing had not been yet been filed at the time the trial court entered the February 23, 2010 order.

. However, the trial court docket reflects that an unspecified notice of filing was filed with the court on April 13, 2010.

. The handwritten April 2010 Order states that the trial court contacted an attorney, identified only by a Florida Bar number, from the office of Washington Mutual’s counsel "before ruling by telephone.”

. It is apparent from the trial court’s docket that, during the pendency of this appeal, Attorney Woods filed with the court, on two separate dates, at least two identical documents titled "Notice of Release or Discharge of Lis Pendens,” with certificates of service bearing the date June 3, 2010. It is equally apparent from the public records of Miami-Dade County that these same documents were also recorded on separate dates.

. The Motion to Vacate states that the Unilateral Note was served upon Tom Casey, Washington Mutual’s Chief Financial Officer, in September 2009.