SALTER, J.
The appellants, non-attorneys representing themselves, seek review of a circuit court deficiency judgment and related post-judgment rulings regarding a defaulted boat loan. Though noting the aggressiveness of the legal actions taken by the appellee, a federal credit union, we are constrained to affirm the judgment and trial court rulings in all respects. Our opinion breaks no new legal ground, and is only written for two reasons: to assist the individual appellants in understanding why the credit union’s actions (and the trial court’s rulings) complied with applicable law, and to caution counsel for the federal credit union regarding the filing of, and reliance upon, extra-record documents.
I. Facts and Procedural Background
In October 2008, the credit union loaned the appellants $38,400 for the purchase of a boat for personal use. The loan was secured by a “first preferred ship mortgage” duly filed with the United States Coast Guard vessel documentation center. On July 6, 2010, the credit union’s collections manager sent a letter to the appellants notifying them that the loan account — then having a balance of $35,271.88 — was past due for non-receipt of the monthly payments due for May and June of that year. The letter referred to prior telephonic and written notifications without a response from the appellants, requested an immediate telephone call to discuss the past due amount ($1,015.12), and indicated that legal action would be considered “[i]f we do not hear from you immediately.”
A few days after the credit union sent the letter, the appellants sent a check to the credit union for the monthly payment amount, $507.56, one-half of the past due amount. The check did not indicate whether it was tendered as part of the past due amount or to cover the monthly amount due for July.[1] On July 16, 2010, the attorneys for the credit union sent a letter, return receipt requested, demanding immediate payment of the $1,015.12 past due amount plus $250.00 in attorney’s fees. The demand letter stated that such a payment “must be received by the undersigned within thirty (30) days of the date of this letter to avoid the initiation of suit against you.” In their subsequent affidavit, the appellants admitted that they received the letter on July 24, 2010.
On July 19, 2010 — only thirteen days after the credit union collection manager’s letter, without further notice, and allegedly before the appellants received the attorney’s demand letter — the credit union’s *954 agent, National Liquidators, repossessed the boat from its slip in Key Largo, Florida, and transported it to the agent’s own premises. On July 24, 2010, the appellants reported the boat stolen; learned from the Monroe County Sheriffs Office that the boat had been repossessed; and (viewed in the light most favorable to the appellants) received the correspondence from the credit union’s attorney and a further notice letter from the credit union collections manager (dated July 21, 2010) advising the appellants of the repossession, demanding payment in full of the entire loan balance (including interest and fees) in order to redeem the boat, and notifying them that the boat would be sold at auction if the boat was not redeemed within the statutory ten-day period.
Through an attorney, the appellants notified the credit union (rather than the attorneys for the credit union) in writing that “we have evidence that our clients have complied with the Purchase and Sale Agreement of the vessel,” “that our clients have made their monthly payments due [to the credit union], on a timely basis,” and that “the taking of the vessel was unlawful and unwarranted, and without merit.” No documents or payment details accompanied the letter. The credit union’s attorneys responded that only the July payment was received and applied (after the repossession), and required that any proof to the contrary be submitted within two weeks or “we will advise the Credit Union to move forward with the sale of its repossessed collateral.” The appellants did not pay the past due amount under protest, provide copies of their own cancelled checks or account records to prove that the loan was actually current rather than past due, or seek any legal relief to prevent the sale of the boat under the applicable provisions of Florida’s Uniform Commercial Code.
On October 7, 2010, over three months after the initial credit union letter regarding the past due payments, and over two months after the appellants became aware of the repossession and the credit union’s legal position, National Liquidators sold the boat for net proceeds of $21,810.32, which was then applied to the defaulted loan. Two weeks later, the credit union filed, a complaint seeking payment of the deficiency amount. The appellants represented themselves, alleging (in the circuit court and here) violations of the federal Fair Debt Collection Practice Act and a failure to produce records. The credit union moved for summary judgment, supported by two affidavits and the supporting computations. The appellants filed an affidavit which did not address the salient elements of the credit union’s complaint or claim for a deficiency judgment. In February 2011, a final summary judgment was entered for $21,256.63 for the deficiency and attorney’s fees and costs.
The appellants filed a pro se “objection” to the summary judgment (including as well a motion to dissolve a garnishment and a claim of exemption), which the trial court treated as a timely motion for rehearing or to alter or amend the final judgment. The trial court denied those motions on May 17, 2011, and this appeal followed.
II. Analysis
Although the actions taken by the credit union seem aggressive, there is no question that they were authorized under the applicable loan documents and Florida statutory provisions. The appellants never provided competent evidence or an affidavit to establish that the May and June 2010 payments were made (when due, or after the credit union’s July demand). Section 4.04 of the ship mortgage authorized the credit union to, among other *955 things, “[t]ake and enter into possession of the Vessel subject to this Mortgage at any time, wherever the same may be, without legal process,” at any time after default. Sections 679.609 and 679.610, Florida Statutes (2010), also authorized the repossession of the boat without judicial process “without breach of the peace,” and sale of the vessel in a “commercially reasonable” manner. Absent proof of a departure from the terms of the loan documents and statutory provisions, the credit union was then entitled under section 679.615 to establish and collect any remaining deficiency after application of the net sales proceeds.[2]
The appellants’ claims were unavailing below and are equally unavailing here because those claims were legally insufficient and ignored the threshold problem — payment defaults. Left uneured, without a payment under protest, and lacking proof of actual payments to rebut the allegation of default, the defaults induced the credit union to pursue its remedies. This factual scenario and this appeal itself would be unremarkable and undeserving of a written opinion, were it not for two important occurrences.
A. The “Demand for Debt Validation”
The appellants filed, as part of their objection to any deficiency, a document that appears to have been copied from the internet, commencing with a bold legend, “Notice to the Principal is Notice to the Agent and Notice to the Agent is Notice to the Principal,” and including a request for sworn evidence “per FRE 602.” If that were the only such document, it would only be a further illustration of the need for a licensed attorney in such matters.
But the appellants later filed a “Demand for Debt Validation” from a person identified as Emory Eugene Exum with a mailing address in Masaryktown, Florida, in Hernando County. This remarkable document again commences with an all-caps, solemn legend that “notice to the agent is notice to the principal; notice to the principal is notice to the agent,” and includes the following commentary:
I am in receipt of your offer to contract in the form of a Civil Action, Case # 10-57217-CA-31, dated January 14, 2011 regarding Account No. 15805-21.
As I want to resolve this matter as soon as possible, and as such, I conditionally accept for value (Pursuant to UCC 1-308) your aforementioned offer ... and agree to perform to the original contract in full pending your response ....

DEMANDS

I, Emory Eugene Exum, demand that you provide the following list of documents certified as true and correct as so stated below:
1. The original lenders mortgage note or contract with wet ink signatures in the actual flesh and blood name of Juan Marcos Velazquez and Caridad Marquez, signed and witnessed by both parties and not a unilateral agreement, and upon which signed page is referenced to the entire agreement.
2. The title page that shows whether or not the lender’s note has already been satisfied.
If I have not received evidence of the above demands within three (3) business *956 days (72 hours) of your receipt of this correspondence, I can only conclude that the claim on. this mortgage by South Florida Federal Credit Union is not valid and unenforceable [sic]....
After additional notices, demands, and commentary, Mr. Exum apparently signed the document for the appellants “under penalty of perjury,” “without prejudice,” and before a notary. According to the current directory of The Florida Bar, Mr. Exum is not a licensed Florida attorney.
We thus serve notice again[3] that borrowers in financial distress (a) defend themselves in litigation without an attorney at their peril, and (b) must beware of schemes readily available on the internet and (typically) described by non-attorney “debt consultants.”
B. Extra-Record Documents
In the appendix to its answer brief, and with references to them in the answer brief (but without moving for leave of court to supplement the record), the credit union included copies of three checks purportedly sent by the appellants for monthly payments but returned by the appellants’ bank for insufficient funds. These checks were not a part of the record in the trial court. Counsel’s excuse at oral argument (that these needed to be submitted to respond to numerous extra-record documents filed here by the appellants) is rejected. Two wrongs never make a right in such matters, and obviously an attorney may not disregard Florida Rule of Appellate Procedure 9.200 simply because a pro se party has first done so.
Appellate review is limited to the record as made before the trial court at the time of the entry of a final judgment or orders complained of. It is entirely inappropriate and subjects the movant to possible sanctions to inject matters in the appellate proceedings which were not before the trial court.
Rosenberg v. Rosenberg, 511 So.2d 593, 595 n. 3 (Fla. 3d DCA 1987).
By separate order, we have denied the appellee’s motion for appellate attorney’s fees and costs for this reason. We also reaffirm the obvious by stating expressly that those extra-record documents played no part in, and were not pertinent to, our decision to affirm the rulings below.
III. Conclusion
For all of these reasons, we affirm the final summary judgment and post-judgment rulings entered by the circuit court, and we deny the credit union’s motion for appellate attorney’s fees and costs.

. The appellants’ affidavit of February 16, 2011, states that the check was intended to be for the July 2010 monthly payment. Although the appellants in their affidavit denied receipt of a subsequent demand letter from the credit union’s attorneys, they did not (a) deny receipt of the credit union's past-due notice letter or telephone calls, or (b) deny that the loan was past due by two months in July 2010.

. An attorney representing the appellants after the initial exchange of letters could have explored, among other things: (1) whether the credit union failed to produce discoverable documents as requested and, if so, whether the court would compel such production; (2) whether the loan could have been "worked out” and the defaults cured; (3) the legal sufficiency of the notice of sale of the boat; and (4) the commercial reasonableness of that sale.

. See JPMorgan Chase Bank, N.A. v. Hernandez, - So.3d-, 2011 WL 2499641 (Fla. 3d DCA 2011), in which a borrower attempted (unsuccessfully) to use a "demand for validation of debt/claim,” "notice of intent to file discharge,” and "unilateral note” to turn her obligation to repay a residential mortgage debt of over $300,000 into a right to collect that amount from the foreclosing mortgage lender.